PEOPLE v. GRIFFIN.

1. CRIMINAL LAW—RIGHT TO REMAIN SILENT—RIGHT TO ATTORNEY.
   Guidelines for procedure in criminal cases, adopted by Supreme Court of the United States, which require warning to an arrested person that he had a right to remain silent, that anything he might say could be used against him, and that he had a right to have an attorney even if indigent, and that such rights could be waived, became applicable to trials after June 13, 1966.

2. SAME—ADMISSIONS—RIGHT TO REMAIN SILENT—RIGHT TO ATTORNEY.
   Statements elicited from an individual after an interrogation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, may not be used against him at a criminal trial if the suspect has requested and been denied an opportunity to consult with his lawyer and has not been warned of his absolute constitutional right to remain silent, a rule applicable to criminal trials since June 22, 1964, *held*, inapplicable, where defendant had at no time requested and been denied an opportunity to consult an attorney.

------

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 21 Am Jur 2d, Criminal Law § 349 *et seq.*
    20 Am Jur, Evidence §§ 498, 561.
    Admissibility of pretrial confession in criminal case—Supreme Court cases. 12 L ed 2d 1340.
[3] 20 Am Jur, Evidence § 667 *et seq.*

3. EVIDENCE—RES GESTAE—HEARSAY.

   Oral statements by an accused to police officers may be admitted as *res gestae* where the occasion of their making is startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting, before there has been time to contrive and misrepresent, and relate to the circumstances preceding it.

4. CRIMINAL LAW—HEARSAY—RES GESTAE—CONSTITUTIONAL RIGHTS.

   Oral statements by defendant to policemen shortly after arrest for taking some paint from the motor vehicle of complaining witness, made without being advised that he had a right to remain silent or that he had a right to court-appointed counsel in the event he could not procure his own attorney, and which statements are not shown to have resulted from coercion or promise and without defendant having requested counsel, *held*, properly admitted at trial held on March 17, 1965 (CL 1948, § 750.356a).

Appeal from Recorder's Court of the City of Detroit; Koscinski (Arthur J.), J. Submitted Division 1 April 5, 1966, at Detroit. (Docket No. 930.) Decided October 25, 1966. Rehearing denied January 3, 1967.

Frank Griffin was convicted of entering into a motor vehicle for the purpose of stealing property therefrom. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*Harold M. Ryan* (*James A. Jameson,* of counsel), for defendant.

HOLBROOK, J. On November 18, 1964, four officers of the Detroit police department responded to a complaint that defendant had stolen some paint.

On the basis of the description given by the complainant, three of the officers pursued the defendant, arrested him and returned to the scene of the crime. One of the officers remained at the scene taking information, and upon the return of the defendant with the other officers, this officer questioned the defendant concerning the stolen paint. The defendant admitted taking the paint. Such admission was made only a few minutes after defendant's arrest. The officer at no time advised the defendant of his constitutional right to remain silent. There was no direct evidence that the defendant's admission was the result of any physical or psychological coercion.

The matter came to trial in the recorder's court on March 17, 1965, before Judge Arthur J. Koscinski, on a charge of violation of CL 1948, § 750.356a (Stat Ann 1954 Rev § 28.588[1]). At this time in the absence of the jury, the defendant, by his attorney, requested that his admission to the officer be excluded from evidence. The request was based on the failure of the officers to inform defendant of his constitutional right to remain silent. No claim of involuntariness was made. The judge determined that the statement was not the result of undue coercion and further concluded that such conversation was part of the res gestae. The officer's testimony was heard by the jury at a later time.

Defendant has appealed and presents the following two questions for review: (1) Whether the introduction into evidence of an arresting police officer's testimony of an inculpatory statement made to such officer by the accused at or near the scene of the crime, without the accused first being informed of his constitutional right to remain silent, voids a conviction based on such testimony. (2) Whether such evidence is admissible as part of the res gestae.

On June 13, 1966, the Supreme Court of the United States in the case of Miranda v. Arizona (1966), 384

US 436 (86 S Ct 1602, 16 L ed 2d 694, 10 ALR3d 974), significantly clarified the rules concerning admissibility into evidence of inculpatory statements by the accused. The Court held at p 478.

"When an individual is taken into custody or otherwise deprived of his freedom by the authorities and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

Although the *Miranda* decision, if applied, would probably invalidate the appellant's conviction, it was held by the Supreme Court on June 20, 1966, in the case of *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882), that the guidelines set forth in *Miranda* are available only to persons whose trials began after June 13, 1966. Since appellant's trial began on November 17, 1964, *Miranda* clearly does not apply.

The *Johnson* decision also stated that the Court's holding in *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977), was to be available only to those defendants whose trials commenced after June 22, 1964. The *Escobedo* decision, therefore, *is* applicable to the instant case.

The *Escobedo* decision has engendered considerable debate as to its precise holding. The Court in *Johnson,* however, has seemed to clarify the meaning of *Escobedo*. The Court at p 733 states:

"Apart from its broad implications, the *precise* holding of *Escobedo* was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial, '[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, *the suspect has requested and been denied an opportunity to consult with his lawyer,* and the police have not effectively warned him of his absolute constitutional right to remain silent.' " (Emphasis supplied.)

Limited to this precise holding, it is clear that the *Escobedo* decision, also, is not applicable to the present case for the defendant at no time during the questioning requested and was denied an opportunity to consult with his lawyer. The *Escobedo* decision thus seems to be limited to its pertinent facts—*i.e.,* where the accused during interrogation had repeatedly asked to speak to his lawyer and such request was denied. That *Escobedo* does not stand for the general proposition that the failure to advise a defendant of his right to remain silent is fatal to admission of inculpatory statements is made clear by this further quotation from the *Johnson* opinion at p 733:

"We recognize that certain State courts have perceived the implications of *Escobedo* and have therefore anticipated our holding in *Miranda*.  Of course, States are still entirely free to effectuate under their own law stricter standards than those we have laid down and to apply those standards in a *broader range of cases than is required by this decision.*" (Emphasis supplied.)

Michigan has not interpreted the *Escobedo* decision insofar as it involves the necessity of a warning as to silence by arresting officers.  Since *Escobedo*, by its own terms, does not invalidate the instant conviction and since there is no Michigan authority for so holding, the present conviction should stand.

Supporting this conclusion is the recent Michigan Supreme Court case of *People* v. *Fordyce* (1966), 378 Mich 208.  In this case the Court held than an otherwise voluntary confession was not rendered involuntary by the failure to advise the defendant at his custodial investigation of his constitutional right to remain silent, where defendant was tried and convicted prior to the nonretroactive *Miranda* and *Escobedo* decisions.  Two factors distinguish the *Fordyce Case* from the case at issue—yet neither distinction seems particularly relevant.

First, in *Fordyce,* the *Escobedo* decision was not applicable whereas in the instant case it is.  In holding that the defendant's rights were not violated, the court stated at p 212:

"In Michigan, prior to *Escobedo* v. *Illinois* (1964) *  *  * neither of the rights contended for by the defendant (to be advised of the right to remain silent and to be advised of the right to counsel) was recognized."

Appellant might contend that the court, from this statement, has thus indicated that the right to be advised of the right to remain silent *was* the Michi⸗

gan rule between the time of the *Escobedo* decision and the handing down of *Miranda*. This conclusion is questionable, however, since as seen, neither *Escobedo* nor any Michigan case expressly compels such result. Indeed, to say that the *Escobedo* decision required a warning of the right to remain silent before police may question the accused is necessarily to make the *Miranda* decision superfluous with regard to Michigan law.

Second, the issue in *Fordyce* was the admissibility of a *written confession* made by defendant to the police after he had been warned that *anything he said could be used against him,* whereas in the instant case the issue was the admissibility of an oral statement made by the accused at the scene of the crime and before he had been advised that he had an absolute right to remain silent.

The warning in *Fordyce* (that anything defendant says may be used against him) is, at best, merely *evidence* of the lack of coercion in relation to the acquisition of a confession. No Michigan case *requires* police officials to so warn an accused as a *prerequisite* to the admissibility of a confession. Moreover, it would seem that there is more reason to require the warning of the *right to remain silent* when the accused is asked to sign a confession some time after the commission of the crime than when the accused is questioned immediately after his alleged commission of the offense. The former case contains an element of potential coercion whereas the latter contains an element of mitigating spontaneity. Yet the Court in *Fordyce* states that *even* in the *former* case, Michigan law prior to *Miranda* did not require a warning of the accused's *right to remain silent.*

As to the issue of the introduction of the police officer's testimony of defendant's oral statement, the answer is likewise quite clear. The Michigan Su-

preme Court in *People* v. *Durkee* (1963), 369 Mich 618, expressly held that statements which have been made by an accused to an investigating officer after an accident in which three persons were killed were properly received into evidence in a prosecution for felonious driving in which the accused was convicted of negligent homicide. The court did not give reasons of authority for its conclusion.

Likewise, a statement by the accused after regaining consciousness, that she had given her children morphine, was held properly admissible as part of the *res gestae* in the case of *People* v. *Quimby* (1903), 134 Mich 625. It must be noted that *res gestae,* in this regard, means admissible hearsay statements which satisfy the following conditions: (1) that there is an occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting, (2) they must have been made before there has been time to contrive and misrepresent and (3) they must relate to the circumstances preceding it. *Sexton* v. *Balinski* (1937), 280 Mich 28, 29, 30.

We conclude that the policeman's tesimony was properly admissible as part of the *res gestae.*

Affirmed.

J. H. GILLIS, P. J., and McGREGOR, J., concurred.