## PEOPLE v. LEWIS.

### APPEAL OF REID.

1. **APPEAL AND ERROR—EXCEPTIONS—JOINT TRIAL.**
   The relaxed practice in a criminal case of counsel relying on exceptions saved by counsel for codefendants in a joint trial is to be discouraged.

2. **CRIMINAL LAW—EVIDENCE—CODEFENDANTS.**
   Defendant's contention that court erred in permitting in evidence a statement of a codefendant *held*, without merit, where objection was not made until after the statement was before the jury, the court made a proper cautionary instruction to the jury and defendant's counsel was given full opportunity to cross-examine the declarant codefendant.

3. **SAME—CONFESSIONS—JOINT TRIAL.**
   A confession or statement by one defendant at a joint trial may be received in evidence as made and if it implicates others and tends to prejudice, then such prejudicial effect is presumed to be obviated by proper instructions.

4. **TRIAL—JURY—INSTRUCTIONS.**
   The jury system functions by having the trial court state the law to the jury and the jury is presumed to follow the court's clear instructions.

5. **CRIMINAL LAW—STATEMENTS OF CODEFENDANTS—JOINT TRIAL.**
   Defendant's contention that a signed statement of a codefendant in prosecution for breaking and entering a business place with intent to commit a larceny should have been admitted into evidence, if at all, only after all references to defendant's name were deleted from the statement *held*, not correct in trial

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 561.
[2, 5] 20 Am Jur, Evidence §§ 263, 493, 589.
[3] 20 Am Jur, Evidence § 493.
Admissibility in favor of accused in criminal case of extrajudicial confession by stranger. 35 ALR 441, 48 ALR 348.
[4] 53 Am Jur, Trial §§ 508–511, 814, 845.
[6] 13 Am Jur 2d, Burglary § 45.

conducted prior to June 13, 1966 (CL 1948, § 750.110, as amended by PA 1964, No 133).

6. Same—Breaking and Entering—Evidence.

Evidence presented at joint trial of appellant and 2 codefendants in prosecution for breaking and entering a business place with intent to commit a larceny *held*, sufficient to support finding appellant guilty of the crime charged (CL 1948, § 750.110, as amended by PA 1964, No 133).

Appeal from Recorder's Court of Detroit; Krause (Paul E.), J. Submitted Division 1 October 6, 1966, at Detroit. (Docket No. 458.) Decided April 13, 1967. Rehearing denied May 19, 1967. Leave to appeal denied by Supreme Court August 17, 1967.

Dale Arthur Lewis, Peter Kamen, and Guy Arthur Reid were convicted of breaking and entering a business place with intent to commit larceny. Defendant Reid appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rheo C. Marchand,* Assistant Prosecuting Attorney, for the people.

*Robert E. Childs,* for defendant Reid on appeal.

Holbrook, J. Defendant was tried before a jury and found guilty in December of 1964, of breaking and entering a place of business with intent to commit larceny.[1] At the trial, evidence was offered to show that Reid and two other men, Lewis and Kamen, broke into a party store in Detroit and took some change from the cash register. Officer Kuziel placed Lewis in custody as Lewis left the rear of the store. At that time $5.78 in change, partly in rolls, was taken from Lewis, and the officer noticed that

[1] CL 1948, § 750.110 as amended by PA 1964, No 133 (Stat Ann 1965 Cum Supp § 28.305).

Lewis' hands were bleeding. There is uncontradicted evidence that Lewis was taken completely by surprise and immediately questioned in a police car near the scene.

Officer Hutsko testified in the presence of the jury that Lewis said, "Guy Reid was the lookout man and had assisted him [Lewis] into the front door." Defendant's trial attorney[2] then objected because Reid was not present when Lewis made the statement. The court immediately instructed the jury as follows:

"Now, members of the jury, this is very important, if you don't mind my saying so. Members of the jury, it is a general rule of law, and it applies here, that whatever one person,—after the alleged events are over with, whatever one person may say in relation to other people, cannot be used against the other people. It cannot bind him or be used against him in any way whatsoever. It can only be used by you members of the jury as affecting the guilt or innocence of the person who said it and not anybody else at all.

"So in this particular,—at the present instance, whatever Mr. Lewis may have told this police officer, you may consider in relation to the guilt or innocence of Lewis, but you cannot in any [way] consider as to the guilt or innocence of Reid. Now, that is very important for you to remember that."

When defendant Reid was arrested he was hiding in some bushes approximately 30 feet from the rear of the party store. When asked what he was doing there, he replied that he was afraid of the police and "he wanted to stay away from the action." Officer Hutsko testified before the jury that Reid called out to Lewis, "Don't tell them nothing."

Out of the presence of the jury the court clearly advised defense counsel that any one of them could

---

[2] Appellate counsel did not represent defendant at the trial.

cross-examine any officer testifying to any statement against interest and could introduce any witness or evidence he wished on the issue of whether the statement was "freely and voluntarily made." Defendant's trial attorney cross-examined Detective Dunn concerning a statement made by defendant Reid. On recross-examination by defendant's attorney, Detective Dunn testified that defendant Reid identified Kamen in a picture and admitted being with him at the bar on the night of his arrest.

Robert Brown and George Wheeler were present in the Chit Chat Bar on the evening of August 30, and early morning of August 31, 1964, and Brown testified that he saw Reid and Lewis together with another man in the bar. Brown and Wheeler left the Chit Chat Bar in Brown's car to get a hamburger and upon returning they discovered two officers searching Mr. Wheeler's car with Mr. Lewis in their custody. The officers said they thought the car belonged to Lewis. Upon being shown identification and registration papers the officers took Lewis to the squad car. The officers desired to complete the search of the area and asked Brown and Wheeler to stay with Reid, who had been found in the bushes near the rear of the party store. Brown testified he talked to Reid and a part of Brown's testimony is as follows:

"*A.* Yes, I was talking to him and I asked him if he knew Dale,—Mr. Lewis. He said, 'No,' he didn't know him. I asked him what he was doing out there with him, being caught in the bushes. He said, 'I don't know. Well, maybe I seen the guy around.' I says, 'Well, you can't tell me that because I saw you in the bar talking with him and another fellow.' He said, 'Okay, so I was in the bar drinking with him. What does that make out of it?'

"*Q.* All right.

"*A.* Mr. Lewis yelled out of the back of the scout

car and told him, says, 'Shut up, don't tell him anything.'

"*Q.* All right. Was there any further conversation then, or did he shut up?

"*A.* Well, he kept talking quite a bit. I think Mr. Wheeler asked him quite a few questions.

"*Q.* All right. Do you recall anything further in the conversation?

"*A.* Wheeler asked him if he wasn't involved why was he hiding in the bushes, and he says, 'Well, I was getting away from all the action.' Said, 'What action?' He said, 'The police officers.'

"*Q.* All right. Then what happened after that?

"*A.* After that the officers took our names, addresses, and they took the two men away in the car and we went home."

Wheeler, testified before the jury that Lewis hollered from the squad car, "don't tell them a damn thing."

When defendant Kamen was placed on the witness stand, the court clearly advised defense trial counsel as to their rights to cross-examine in the absence of the jury; Reid's attorney did not take this opportunity to cross-examine Kamen. Conflicting testimony going to the voluntariness of Kamen's statement to Detective Dunn was heard in the absence of the jury and the trial judge determined that Kamen's statement was voluntarily made. The case was tried before the rule set down in the case of *People* v. *Walker* (on rehearing, 1965), 374 Mich 331 governing the procedure of such cases. The court also submitted the question of the voluntariness of Kamen's statement to the jury.

Detective Dunn read before the jury the statement signed by defendant Kamen, which stated that Reid was involved in the crime. Defendant Reid's attorney made no objection whatever to this testimony.

Before the testimony was received into evidence the court instructed the jury as follows:

"Now, there is also going to be read the statement of Mr. Kamen, which is allegedly a statement Kamen allegedly made, and the same goes for him. I am not saying they were made. You heard them claim they were made. Now, whatever you find Mr. Kamen said, if you further find it was freely and voluntarily made—and I will instruct you more fully about that later on—but if you do find it was freely and voluntarily by Mr. Kamen, then you can only consider it in relation to the guilt or innocence of Mr. Kamen and you cannot consider it in relation to the guilt or innocence of Mr. Reid.

"Now, I told you this before. I tell you it again. It is difficult, I understand that. You have to block your mind."

After the people had rested, defendant Reid's trial attorney moved for a directed verdict of not guilty on the ground that there was no competent evidence connecting Reid with the crime. The motion was denied.

Thereafter the court repeated the substance of an earlier instruction:

"Now also, I have instructed you before and I will instruct you again, that if you do find that an alleged confession or statement was made by either one of these defendants on trial, you may only consider that alleged confession or alleged statement against interest in relation to the guilt or innocence of the individual who made it and you cannot consider the alleged statement against interest or confession of someone else that was made other than the person who made it."

Defendants Reid and Kamen were found guilty by the jury and sentenced to prison terms. Lewis was found guilty by the trial judge and sentenced to probation.

Defendant Reid asks this Court to reverse and remand and raises three issues in this appeal. (1) Was it prejudicial error for the trial court to admit Lewis' statement into evidence, which implicated Reid in the crime? (2) Was it prejudicial error for the trial court to fail to delete all reference to defendant Reid in defendant Kamen's statement? (3) Was there sufficient evidence to support the jury finding of guilty in regard to defendant Reid?

We join and discuss the first 2 issues raised by defendant.

At trial, defendant's then attorney failed to make timely objection to the introduction of Lewis' statement, and ordinarily we would not consider this matter on appeal. However, with court prompting, Reid's trial attorney made his objection after the statement was before the jury. The explanation for the late objection was that he could not hear the witness. After the cautionary instruction by the court, no request was made to strike or for further instructions.

It is also important to note that defendant's attorney at trial made no objection to the reading before the jury of Kamen's signed statement to Detective Dunn. The relaxed practice of relying on exceptions saved by counsel for codefendants in a joint trial is to be discouraged. But, perhaps, even more damaging to appellant's case is the fact that defendant's then attorney was given full opportunity to cross-examine the declarant Kamen himself; having failed to do so, appellant cannot now claim error.

Even if there had been no such confrontation, the law of this jurisdiction, insofar as reasonable search can determine, uniformly supports the admission into evidence before the jury of Detective Dunn's testimony relating to Kamen's signed statement. *People v. Louzon* (1953), 338 Mich 146, 154, 155; *People v.*

*Roxborough* (1943), 307 Mich 575, 585, 587. The court carefully instructed the jury that Kamen's statement was admissible only on the question of the guilt or innocence of defendant Kamen and was not to be used as evidence against any other codefendant. This ancient rule of evidence in joint trials comes to us from the English common law; it always has been and is now the law in this State. The appellant cites no appropriate case to the contrary.

This is not to say that all judges have wholeheartedly supported this rule. The judicial misgivings in the dissenting opinion of *Paoli* v. *United States* (1957), 352 US 232 (77 S Ct 294, 1 L ed 2d 278), have been echoed by a few courts in other jurisdictions. This Court is sensitive to the real possibility that juries in practice find it difficult to follow such court instructions and may use extrajudicial admissions against interest by one defendant in a joint trial as evidence against codefendants in spite of the fact that the admission was not made in the presence of those prejudiced. We cannot and do not say that the instructions in question are not easily followed by either judges or juries, but we do recognize that the policy in favor of joint trials is of necessity, a particularly strong one; and it is important to note that the appellant has never moved for a severance. If this type of admission is completely excluded from evidence, we shall see admittedly guilty criminals go free. The policy in favor of jury trials remains unchanged and unassailable. Justice Burton, speaking for the majority in the *Paoli Case, supra,* points to an important premise underlying our jury system, at p 242:

"It is a basic premise of our jury system that the court states the law to the jury and that the jury applies that law to the facts as the jury finds them. Unless we proceed on the basis that the jury will

follow the court's instructions where those instructions are clear and the circumstances are such that the jury can reasonably be expected to follow them, the jury system makes little sense.  Based on faith that the jury will endeavor to follow the court's instructions, our system of jury trial has produced one of the most valuable and practical mechanisms in human experience for dispensing substantial justice."

Perhaps, it would have been fairer to sever defendant Reid from the joint trial, but this is not for us to answer because no such motion was made, and no argument is raised that the trial court abused its discretion in joining these defendants for trial.  Instead appellant argues that his name should have been deleted from Kamen's signed statement as it was read to the jury.  This argument, however, was not presented at trial; and no case applicable to these facts in any jurisdiction is offered in support for such a procedure.

Appellant relies heavily upon *People* v. *Aranda* (1965), 63 Cal 2d 518 (47 Cal Rptr 353, 407 P2d 265), followed in several other jurisdictions.  But in the instant case there was the requisite confrontation not found in the *Aranda Case,* when Kamen himself was placed on the witness stand subject to cross-examination.

Also, the case before us differs radically on the facts from *Aranda* on an even more fundamental point.  In the *Aranda Case* the confession was inadmissible *even against the declarant.*  Once the California court had decided to exclude the confession on the basis of *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977), the rest of the decision specifying the three procedural alternatives upon which the appellant relies was mere *dicta.* This is not the case we are considering.  In the instant case it is clear that Kamen's statement was

admissible at least against him. Appellant argues for the first time on appeal that "Kamen was not told about his right to counsel" contrary to *Escobedo* v. *Illinois, supra.* Apart from the fact that the appellant did not present this argument at trial, it is based upon an erroneous interpretation of the facts in the *Escobedo Case.* In that case the defendant *requested* and *was denied* his right to consult with his lawyer. The precise holding in the *Escobedo Case* is limited to those facts. *Johnson* v. *New Jersey* (1966), 384 US 719 (86 S Ct 1772, 16 L ed 2d 882) and *People* v. *Griffin* (1966), 4 Mich App 604, 608.

The requirements set forth in the case of *Miranda* v. *Arizona* (1966), 384 US 436 (86 S Ct 1602, 16 L ed 2d 694), applies only to trials begun after June 13, 1966, and therefore do not apply to this case. *Johnson* v. *New Jersey, supra,* cited in *People* v. *Griffin, supra,* and *People* v. *Fordyce* (1966), 378 Mich 208, at 211, 212. This Court in the *Griffin* case at p 609 quoted the Michigan Supreme Court in the *Fordyce* case to the following effect: "In Michigan, prior to *Escobedo* v. *Illinois* (1964) * * * neither of the rights contended for by the defendant (to be advised of the right to remain silent and to be advised of the right to counsel) was recognized." Thus, in a case such as ours that was tried before *Miranda* was decided and where *Escobedo* does not apply, Kamen's statement would be admissible. For these reasons the cases of *Louzon* and *Roxborough, supra,* are controlling and we hold that the trial court properly admitted Kamen's statement under appropriate instructions to the jury.

With respect to the third issue raised by the appellant, this Court cannot be sure that the jury did not use the statements by Lewis and Kamen as evidence against defendant Reid. Even though we may speculate that these statements might have

prejudiced defendant Reid's case before the jury, we cannot say that this was reversible error. We assume on appeal that the jury followed the instructions of the trial judge. Lewis's statement received before objection, was admissible against Lewis, and the jury was properly instructed under the circumstances. Kamen's statement cannot be accurately characterized as hearsay when Kamen himself took the witness stand subjecting himself to full cross-examination by counsel for any other defendant who wished to exercise his right to confront him. There was a certain amount of circumstantial evidence against defendant Reid. These facts together with the testimony of Brown without objection, describing Reid's demeanor at the scene immediately after the crime and Reid's explanation of his actions presented sufficient evidence to support the finding of guilty.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.