PEOPLE v KOZAR

1. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

Legislative intent is to be gathered not from a particular provision of a statute, but from the act as a whole, giving meaning to all sections of the act.

2. STATUTES—CONSTRUCTION—AMBIGUITY—LEGISLATIVE INTENT—REASONABLENESS.

When interpreting an act that. is ambiguous the courts seek a reasonable construction in light of the .purpose sought to be accomplished, and the intention is to be taken or presumed according to what is consonant to reason and good discretion.

3. AUTOMOBILES—IMPLIED CONSENT.STATUTE—PURPOSE OF ACT.

The immediate purpose of the implied consent law is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated (MCLA 257.625).

4. AUTOMOBILES—IMPLIED CONSENT STATUTE—BLOOD ALCOHOL CONTENT—TIME OF OFFENSE—TIME OF TEST—LEGISLATIVE INTENT.

It was the Legislature's intent that, for the purpose of the implied consent statute, a defendant's blood alcohol content at the time of the offense should be regarded as equivalent to his blood alcohol content as determined by a subsequent chemical test provided such test was administered within a reasonable time after the defendant's arrest (MCLA 257.625a).

5. AUTOMOBILES—IMPLIED CONSENT STATUTE—BLOOD ALCOHOL CONTENT—EVIDENCE—TIME OF OFFENSE—TIME OF TEST—EXPERT TESTIMONY.

In a prosecution for driving a vehicle while under the influence of intoxicating liquor, the prosecutor is not required to introduce expert testimony to interpret and relate the results of chemical tests back to the time of the alleged offense, and such test results are admissible into evidence without such testimony

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statutes §§ 142–341.

[3–5] 7 Am Jur 2d, Automobiles and Highway Traffic § 259.

provided the other prerequisites to admissibility have been met (MCLA 257.625a).

Appeal from Allegan, James E. Townsend, J. Submitted Division 3 April 4, 1974, at Grand Rapids. (Docket No. 18691.) Decided July 25, 1974. Leave to appeal denied, 392 Mich 819.

Michael J. Kozar was convicted, in district court, of driving under the influence of intoxicating liquor. Defendant appealed to circuit court. The district court jury verdict was vacated, and the case was remanded for a new trial. The people appeal by leave granted. Reversed and remanded for reinstatement of the district court jury verdict.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary Stewart,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Howard C. Marderosian,* Acting Director, by *William P. Weiner,* of counsel), for the people.

*Leo W. Hoffman* and *Stephen M. Kantz,* for defendant.

Before: ALLEN, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

T. M. BURNS, J. At approximately 7:30 p.m. on the night of December 9, 1972, defendant, while driving in the City of Otsego, Michigan was stopped by an Otsego police officer for a traffic violation. During the course of this investigation, it became apparent to the officer that defendant was visibly intoxicated, and defendant was consequently taken into custody.

On February 16, 1973, defendant was tried be-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

fore a jury in the 57th Judicial District Court, Allegan County, Michigan, on three charges, only one of which, driving while under the influence of intoxicating liquor contrary to MCLA 257.625; MSA 9.2325, is relevant to this appeal.

Otsego Police Officer Donald Morris testified in depth regarding two Breathalyzer tests which he administered to the defendant, relating that the first test was administered at 8:35 p.m. on December 9, the second test was given at 8:45 p.m. on the same date, and that both tests indicated the presence of 0.18 percent alcohol (by weight) in defendant's blood. A copy of the written results of these tests was admitted into evidence at trial.

Defendant was convicted of all three charges and subsequently appealed to the Allegan Circuit Court, alleging that under MCLA 257.625a; MSA 9.2325(1) plaintiff was obligated to introduce expert testimony which would relate the Breathalyzer test results back to the time of the alleged offense. The circuit court agreed with defendant's contention and on November 6, 1973, issued an order vacating the district court jury verdict and remanding the case for a new trial. Plaintiff appeals, by leave granted, from that order.

The sole issue raised on appeal is whether in a criminal prosecution for driving a vehicle while under the influence of intoxicating liquor, the prosecution is required to offer competent expert testimony to interpret and relate the results of Breathalyzer tests back to the time of the alleged offense before such test results can be admitted into evidence.

MCLA 257.625a; MSA 9.2325(1) provides in pertinent part as follows:

"(1) In any criminal prosecution for driving a vehicle while under the influence of intoxicating liquor, the

amount of alcohol in such person's blood *at the time alleged as shown by chemical analysis of the person's * * * breath * * * shall be admissible into evidence* and shall give rise to the following presumptions * * * ." (Emphasis supplied.)

Plaintiff contends that a proper construction of the above-quoted provision is that the Legislature, via this statutory enactment, has determined that the alcoholic content of a defendant's blood at the time a chemical test is administered is admissible as sufficient evidence that the defendant was intoxicated at the time of the offense. It is, therefore, plaintiff's view that it is not necessary to produce expert testimony relating the test data backward to achieve an alcoholic content figure presumably applicable to defendant at the time of the offense.

On the other hand, defendant argues that a proper construction of the provision in question compels the conclusion that our Legislature intended a defendant to be penalized only according to the degree of his intoxication at the time the offense was committed, and not as a result of his blood alcohol content at some subsequent time when a chemical analysis is performed. Defendant thus maintains that in the absence of the requisite relation back via expert testimony, the results of subsequent chemical tests are intrinsically meaningless and hence inadmissible.

So far as we are able to determine from the briefs submitted and our independent research, this is a case of first impression in this state. The statute does not expressly state that expert testimony is necessary to relate test results back to the time of the alleged offense and, indeed, it is ambiguous on this point. In this type of situation, the legislative intent is to be gathered not from a particular provision but from the act as a whole,

giving meaning to all sections of the act. *Collins v Secretary of State,* 384 Mich 656; 187 NW2d 423 (1971); *Smith v City Commission of Grand Rapids,* 281 Mich 235; 274 NW 776 (1937); *Sibley v Smith,* 2 Mich 486 (1855). And, when interpreting an act that is ambiguous, "we seek a reasonable construction of statutes in the light of the purpose sought to be accomplished *[Benjamin v Huntington Woods,* 349 Mich 545, 555; 84 NW2d 789 (1957)]" and "the intention is to be taken or presumed, according to what is consonant to reason and good discretion". *Sibley v Smith, supra,* p 492.

"The intent of the 'implied consent law' has been said to be 'to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated' and ultimately 'to prevent intoxicated persons from driving on the highways'. *Collins v Secretary of State,* 384 Mich 656, 668; 187 NW2d 423 (1971). Pursuant to this intent the Legislature has provided that certain specified chemical tests of blood alcohol content shall be admissible in evidence in criminal prosecutions for driving a vehicle while under the influence of intoxicating liquor, and has defined the effect to be given certain results." *People ex rel Ingham Prosecutor v 54th District Judge,* 47 Mich App 517, 520; 209 NW2d 689 (1973).

Looking at the act as a whole, we are unable to find support for defendant's claim that the prosecuting attorney must, by expert testimony, relate test results back to the time of the alleged offense as a condition precedent to admissibility. To so hold would be to frustrate the immediate purpose of the "implied consent law", which, as we have already stated, is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. We believe that the best evidence of blood alcohol content is the results of the specified

chemical tests enumerated in the statute by our Legislature, and that it was the Legislature's intent that for purposes of this statute, a defendant's blood alcohol content at the time of the offense should be regarded as equivalent to his blood alcohol content as determined by a subsequent chemical test provided such test was administered within a reasonable time after the defendant's arrest.

We believe this interpretation of our statute to be in accordance with the modern and majority view on this subject. At 7 Am Jur 2d, Automobiles and Highway Traffic, § 332, pp 875–876, it is stated:

"In a prosecution for driving while intoxicated or under the influence of intoxicating liquor, the results of an alcohol breath test, such as the test using the 'Harger drunkometer', the 'Forrester intoximeter', or the 'breathalyzer', are admissible in evidence. It has been held that the drunkometer is sufficiently established as scientifically reliable and accurate for determining the alcoholic content of blood to admit testimony of the reading obtained upon a properly conducted test *without antecedent expert testimony* that the reading is a trustworthy index of alcohol in the blood, or as to why it is." (Emphasis supplied.)

It should be pointed out that many other states considering this problem have held that expert testimony is not necessary to relate back blood tests to the time of the alleged driving.[1] We agree with the reasoning of these decisions.

In the absence of clear statutory language re-

---

[1] *State v Parrott,* 187 Neb 213; 188 NW2d 694 (1971); *State v Quinn,* 289 Minn 184; 182 NW2d 843 (1971); *State v Miller,* 146 NW2d 159 (ND, 1966); *State v Becker,* 429 SW2d 290 (Mo App, 1968); *See also State v King,* 6 NC App 702; 171 SE2d 33 (1969); *State v Johnson,* 42 NJ 146; 199 A2d 809 (1964); *People v Morris,* 63 Misc 2d 124; 311 NYS2d 53 (1970).

quiring the need for expert testimony to interpret test results, we conclude that expert testimony is not necessary to relate test results back to the time of the alleged offense. We, therefore, hold that in a prosecution for driving a vehicle while under the influence of intoxicating liquor, the prosecutor is not required to introduce expert testimony to interpret and relate the results of chemical tests such as the Breathalyzer test back to the time of the alleged offense, and that such test results are admissible into evidence without such testimony provided the other prerequisites to admissibility have been met.[2] By this holding, we are not precluding the introduction and use of such testimony at a trial for driving while under the influence of intoxicating liquor. Interpretation of the results of the Breathalyzer test as it relates to the time of arrest would be permissible by way of cross-examination or introduction of expert evidence by defendant.

In light of this holding, we conclude that the circuit court erred in setting aside the district court jury verdict.

The judgment of the circuit court is reversed and remanded for reinstatement of the district court jury verdict.

All concurred.

---

[2] These prerequisites, not at issue in the case at bar, include establishing the qualifications of the operator administering the test, the method or procedure followed in administering the test, that the test was performed within a reasonable time after the arrest, and the reliability of the testing device. Foundation testimony concerning these prerequisites must be introduced before the test results may be admitted into evidence.