PEOPLE v McALISTER

Docket No. 133519. Submitted February 10, 1993, at Lansing. Decided February 8, 1994, at 9:00 A.M. Leave to appeal sought.

William T. McAlister was convicted by a jury in the Shiawassee Circuit Court, Gerald D. Lostracco, J., of felony murder, four counts of kidnapping, and three counts of assault with intent to commit murder. The defendant, sentenced to life imprisonment for the murder and kidnapping convictions and 65 to 120 years for the assault convictions, appealed from his convictions and the sentences for his assault convictions.

The Court of Appeals *held:*

1. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial. The cautionary instructions given by the court were sufficient to cure the error on which the motion was based, the alleged improper reference to a statement of the defendant that had been ordered suppressed.

2. The trial court erred in concluding that *Michigan v Harvey,* 494 US 344 (1990), which held that a prosecutor may impeach a defendant's false or inconsistent testimony with a statement taken in violation of the defendant's right to counsel, applies to the impeachment of a defense witness as well as a defendant. However, the court's error was harmless because the court instructed the jury to strike the offending question from consideration. In addition, the weight of the evidence supports the jury's finding of intent regardless of the wrongful reference to the defendant's statement that had been ordered suppressed.

3. The trial court did not abuse its discretion in refusing to permit the admission into evidence of a scrapbook allegedly prepared by the defendant. The foundation for admission of the scrapbook was insufficient.

4. The trial court did not authorize the jury to recommend

REFERENCES

Am Jur 2d, Criminal Law §§ 535-543, 732-738, 967-971; Evidence §§ 610-614; Trial §§ 840, 1353-1361, 1436-1447, 1459-1485, 1706-1749; Witnesses §§ 929-937, 964-977.

See ALR Index under Attorney or Assistance of Attorney; Confessions and Admissions; Exclusion and Suppression of Evidence; Harmless and Prejudicial Error; Impeachment of Witnesses; Instructions to Jury; Life Imprisonment; Mistrial; Sentence and Punishment; Witnesses.

leniency or request the jury's advice regarding the matter. Any recommendation of leniency by the jury is surplusage and did not prejudice the defendant.

5. The trial court properly refused to instruct the jury regarding the disposition of a defendant found not guilty by reason of insanity or guilty but mentally ill.

6. The sentences for the assault convictions, which the trial court explicitly intended to be life sentences from which no release would be possible, violated the holding of *People v Moore*, 432 Mich 311 (1989), that where a trial court chooses to impose a term of years rather than life imprisonment, it may not impose a term of years that has the effect of avoiding eligibility for parole. Resentencing is required with regard to the sentences for the assault convictions.

Convictions affirmed. Case remanded to the trial court for resentencing with regard to the assault convictions.

1. CRIMINAL LAW — WITNESSES — IMPEACHMENT.

A prosecutor may impeach a defendant's false or inconsistent testimony with a statement taken in violation of the defendant's right to counsel; this rule applies solely to the impeachment of the defendant and not to the impeachment of a defense witness.

2. MOTIONS AND ORDERS — MISTRIAL.

The grant or denial of a motion for a mistrial is within the sound discretion of the trial court, and there must be a showing of prejudice to the defendant's rights to establish error requiring reversal; a trial court's ruling is an abuse of discretion where it is so grossly in error as to deprive the defendant of a fair trial or to amount to a miscarriage of justice.

3. CRIMINAL LAW — JURY INSTRUCTIONS — RECOMMENDATIONS OF LENIENCY.

A trial court may not authorize a jury to recommend leniency as part of its verdict; an unauthorized recommendation of leniency by a jury may be treated as surplusage.

4. CRIMINAL LAW — JURY INSTRUCTIONS — NOT GUILTY BY REASON OF INSANITY — GUILTY BUT MENTALLY ILL — DISPOSITION OF DEFENDANT.

A trial court may not instruct a jury regarding the disposition of a defendant found not guilty by reason of insanity or guilty but mentally ill.

5. CRIMINAL LAW — SENTENCING — TERM OF YEARS.

A trial court that chooses to impose a term of years rather than

life imprisonment may not impose a term of years that has the effect of avoiding eligibility for parole.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Ward Clarkson,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *P.E. Bennett*), for the defendant on appeal.

Before: MACKENZIE, P.J., and HOOD and WHITE, JJ.

PER CURIAM. Defendant appeals his convictions by a jury of felony murder, MCL 750.316; MSA 28.548 (one count), kidnapping, MCL 750.349; MSA 28.581 (four counts), and assault with intent to commit murder, MCL 750.83; MSA 28.278 (three counts), and his sentences of 65 to 120 years for the assault convictions, which he received in addition to mandatory life for the murder conviction, and life imprisonment for the kidnapping convictions. We affirm defendant's convictions, but remand for resentencing for the assault convictions.

On the morning of September 26, 1989, defendant gained entry into the First Federal of Michigan bank in Perry, before the bank opened, by pulling a gun on two arriving employees, Betty Green and Marilyn Parks, and announcing a holdup. Two other employees, Richard Church and Susanne McIntosh, were also held at gunpoint as they arrived for work. Obeying defendant's instructions, Parks turned off the alarms, opened the vault, and filled a paper bag with approximately $50,000. During this time, defendant wore a ski mask and gloves.

Defendant then removed the mask and gloves, and ordered Church to drive him and the other

three employees to Flint using Green's car. He then changed his mind and ordered Church to return to the bank, where defendant's own car was parked. He directed McIntosh to drive Green's car and Church to drive defendant's car behind Green's, threatening to kill Church's co-workers if he did not follow closely. Telling the employees that they would be driving to Chicago, defendant instead directed the two cars toward Lansing, and then, eventually, into the surrounding countryside. They stopped in a swampy area, and defendant ordered the four to lie down in the road behind his car. Before they had time to comply, defendant changed his mind, saying that it was not going to work, and ordered the four to get into his car. With Church driving, defendant directed the car to a gravel pit a few miles away. Seeing another car there, defendant grew alarmed and ordered Church to go back to the road. After traveling some additional distance on back roads, defendant directed Church to stop the car, and ordered the four to lie down in the middle of the road behind the car. He instructed them to remain there for fifteen or twenty minutes after he was gone. Instead of departing, however, defendant put the car in reverse and backed up. The tailpipe struck Green in the head. Parks was crushed. Though the car struck McIntosh and Church as well, they were able to roll out of the way and run. Defendant, seeing that Church and McIntosh were escaping, got out of his car and fired two shots at McIntosh. McIntosh screamed and fell, hoping to make defendant think she had been hit. Defendant then fired an additional shot in Church's direction. Defendant got back into the car and, apparently in an attempt to free his wheels, ran back and forth several times over Green and Parks before departing. Church made his way to a nearby house and

called the police. Michigan State Police troopers found Green and McIntosh shortly thereafter. Parks was pronounced dead at the scene.

Defendant was overtaken and arrested at a roadblock in Kalamazoo County. He surrendered peaceably. Both before and after being read his *Miranda*[1] rights, defendant told the arresting officer to do him a favor: to give him all the time he could get because he deserved it.

Later, while being questioned by Federal Bureau of Investigation and state police agents, defendant gave an extensive statement in which he said the reason he ran over the four bank employees was that he did not want to get caught. The statement was ordered suppressed because it was given after defendant had invoked his right to counsel. That decision is not at issue in this case.

Defendant's trial defense was insanity. Defendant's expert psychiatric witness, Dr. Ronald Bradley, testified that defendant suffered from a major depressive disorder resulting from having been raised in a dysfunctional family and, in part, from a genetic disorder. Dr. Bradley testified that defendant originally bought the gun used in the holdup intending to kill himself, and devised the bank robbery only after finding himself unable to commit suicide. In Dr. Bradley's opinion, defendant hoped that, by robbing the bank, he would be caught and punished for being a failure in life. The doctor testified that defendant's actions in planning and conducting the robbery, and his subsequent actions concerning the four employees, were the result of hearing voices telling him to do those things and experiencing impulses he could not resist. According to Dr. Bradley, at the moment he backed over the hostages, defendant be-

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

lieved that he was rolling over his own parents and siblings.

One of the sources on which Dr. Bradley based his opinion was a scrapbook of news articles compiled by defendant, which allegedly demonstrated defendant's history of depression. The trial court denied defendant's request to admit the scrapbook into evidence, ruling that a sufficient foundation was lacking.

On cross-examination, Dr. Bradley testified that he reviewed a police report, after which the prosecutor questioned him as follows:

> *Q.* And in that material didn't he also say that the reason he did that [backed over the hostages] is because he didn't want to get caught?
>
> *A.* What, your question is not clear.
>
> *Q.* The reason he backed over those people is because he didn't want to get caught?
>
> *A.* If you look at different times in his testimony he . . .
>
> *Q.* But back to my original question, Doctor, isn't it true that he told the police that the reason he backed over those people is because he didn't want to get caught?

Defendant objected and moved for a mistrial. The trial court denied the motion after determining that Dr. Bradley, who did not have access to a police report, had misidentified a forensic report as a police report. The judge stated that the prosecutor was free to inquire into the basis of an expert's opinion when that basis was referred to in testimony. The trial court also cited for support *Michigan v Harvey,* 494 US 344; 110 S Ct 1176; 108 L Ed 2d 293 (1990), which held that a prosecutor may impeach a defendant's false or inconsistent testimony with a statement taken in violation of the defendant's right to counsel. In lieu of

granting a mistrial, the trial court gave the following cautionary instruction to the jury:

> Members of the jury, I just want to give you a cautionary instruction as to the last question by the prosecutor to the witness, Dr. Bradley, something to the effect that the reason for—or the reason given by the defendant to the police for backing over the victims. And I want to instruct you as to that question, as it was phrased by the prosecutor, that's stricken from the record, you're to disregard—and there hasn't been any answer because there was an objection at that point. You'll recall my earlier instructions that questions by either counsel are not evidence but, rather, it's the answer given in response to those questions by the witness. Indeed, there's been no answer and I now instruct you to disregard the question and strike it from your minds, meaning from your consideration when you get into deliberations and you consider what has been allowed or legally admissible evidence, which is all that you can consider for your deliberations as to the issues in this case.

In further support of the insanity defense, several members of defendant's family testified extensively about defendant's rearing by an alcoholic mother who later developed early onset Alzheimer's disease, a disinterested father, and two abusive stepfathers.

Psychologist Carol Holden of the Center for Forensic Psychiatry testified on rebuttal that during her interview with defendant he had stated: when he bought the gun he was not thinking of suicide; he had planned the bank robbery the day before as a means of paying his college tuition; he had not been hearing voices during or after the robbery; he did not know what he was thinking when he ran over the hostages; and despite an

extremely oppressive home life, he had formed close bonds with his brothers and sisters and saw them as a source of tremendous support. Dr. Holden believed that although defendant exhibited some symptoms of depression in the days before the robbery, other signs of health, as well as his ability to plan the robbery beforehand, tended to negate Dr. Bradley's diagnoses of major depressive disorder and impulse disorder. Dr. Holden expressed the opinion that defendant suffered a personality or character disorder, but was not mentally ill, and throughout the robbery and kidnapping took actions indicating he knew what he was doing was wrong.

The trial court instructed the jury regarding the possible verdicts of not guilty by reason of insanity and guilty but mentally ill. The jury found defendant guilty of felony murder, kidnapping, and assault with intent to commit murder. After delivering the verdict and being discharged, several of the jurors appeared distraught. The foreperson wrote a note on behalf of all the jurors asking the trial court to consider giving defendant psychiatric or psychological assistance as part of his sentence. The trial court sentenced defendant to mandatory life for the murder conviction and life imprisonment for the kidnapping convictions. Noting that defendant, who was twenty-two at the time, had a life expectancy of 48.55 years, and relying on *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989), the court sentenced him to 65 to 120 years for the assault convictions, emphasizing "this Court's intent being firmly to ensure that life . . . is what your sentence is to be."

Defendant argues on appeal that the trial court abused its discretion in denying his motion for a mistrial and erred in refusing to admit his scrapbook into evidence. He also argues that his convic-

tions must be reversed because the jury violated the instruction not to let punishment affect its deliberations, and because the trial court did not instruct regarding the disposition of defendant following the possible verdicts of not guilty by reason of insanity and guilty but mentally ill. Finally, defendant argues that the trial court abused its discretion in sentencing defendant to terms of 65 to 120 years for the convictions of three counts of assault with intent to commit murder.

Defendant's claim that the trial court abused its discretion in denying his motion for a mistrial is based on the argument that defendant's insanity defense was harmed because the prosecutor deliberately and repeatedly referred to defendant's suppressed statement in cross-examining Dr. Bradley. The grant or denial of a mistrial is within the sound discretion of the trial court, and there must be a showing of prejudice to the defendant's rights if error requiring reversal is claimed. The trial court's ruling must be so grossly in error as to deprive a defendant of a fair trial or to amount to a miscarriage of justice. *People v Gonzales,* 193 Mich App 263; 483 NW2d 458 (1992). We affirm the trial court's decision.

We note first that Dr. Bradley's misidentification of a forensic report as a police report gave rise to the prosecutor's questions. The prosecutor, responding to a reference to a police report, believed that he could question the basis of Dr. Bradley's opinion in regard to the report. The rules of evidence provide that an expert may be required to disclose the facts or data underlying an opinion. MRE 705. The repetition of the question arose from Dr. Bradley's confusion, and occurred to the extent it did because defense counsel did not object immediately.

We find the trial court's cautionary instruction to the jury sufficient to cure the error. The court pointed out that the witness had not responded to the question, reiterated its former instruction that questions by either counsel are not evidence, and emphasized that only a witness' answer in response to those questions was legally admissible evidence that could be considered by the jury. Jurors are presumed to have followed a court's instructions until the contrary is clearly shown. *People v Pearson,* 13 Mich App 371, 382; 164 NW2d 568 (1968); *People v Lewis,* 6 Mich App 447, 454, 455; 149 NW2d 457 (1967). Also, we note that the prosecutor did not refer to defendant's statement during closing argument.

The trial court erred in concluding that *Michigan v Harvey, supra,* applies to impeachment of a defense witness as well as a defendant. *Harvey* applies solely to impeachment of a defendant; a prosecutor may not use illegally obtained statements to impeach a defense witness. *James v Illinois,* 493 US 307, 320; 110 S Ct 648; 107 L Ed 2d 676 (1990). However, because the court instructed the jury to strike the question from consideration, the court's erroneous conclusion had no effect on the proceedings.

Finally, we observe that the weight of the evidence supports the jury's finding of intent regardless of the wrongful reference to defendant's suppressed statement. Having considered all these factors, we find no abuse of discretion in the trial court's denial of defendant's motion for a mistrial.

We also find no abuse of discretion in the trial court's refusal to permit admission of defendant's scrapbook. Here, as at trial, defendant argues that the scrapbook demonstrated a history of abnormal thinking that reflected defendant's longstanding depression. The trial court concluded that al-

though Dr. Bradley could testify regarding his opinion concerning the scrapbook, the foundation for admission of the scrapbook itself was insufficient.

The decision whether to admit or exclude evidence is within the trial court's discretion. *People v Underwood,* 184 Mich App 784, 787; 459 NW2d 106 (1990). This Court will find an abuse of discretion only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling. *Id.* We conclude that the trial court was justified in determining that Dr. Bradley's testimony alone did not establish that the scrapbook was what defendant purports it to be, a book prepared by defendant during a specified period.

We also reject defendant's arguments that his convictions must be reversed because the jury disregarded the trial court's instruction not to consider punishment, and conversely, because the court failed to instruct regarding defendant's disposition in the event the jury found him not guilty by reason of insanity or guilty but mentally ill. While a trial court may not authorize a jury to recommend leniency as part of the verdict, an unauthorized recommendation of leniency may be treated as surplusage. *People v Warner,* 289 Mich 516, 521; 286 NW 811 (1939). Here, the trial court did not authorize the jury to recommend leniency or request the jury's advice regarding the matter. The jury rendered its verdict and was subsequently discharged, and only then did the jurors communicate their request that the court consider giving defendant psychiatric or psychological assistance as part of his sentence. The request was clearly not "authorized" by the court, and, thus, if viewed as a recommendation of leniency, can be regarded as surplusage. We do not find that it

prejudiced defendant in any way. See *People v Lindsey,* 56 Mich App 458, 466; 224 NW2d 273 (1974). With regard to defendant's other contention, a trial court *must not* instruct a jury regarding the disposition of a defendant found not guilty by reason of insanity or guilty but mentally ill. *People v Ramsey,* 422 Mich 500, 519; 375 NW2d 297 (1985). There was, therefore, no error in the court's failure to give such an instruction.

Finally, defendant argues that the trial court's sentences of 65 to 120 years for the assault convictions violate the holding of *People v Moore, supra,* in which the Supreme Court held that where a trial court chooses to impose a term of years rather than life imprisonment, the trial court may not impose a term of years that has the effect of avoiding eligibility for parole. *Id.* at 321-324, 326. Although our affirmance of defendant's conviction of felony murder may appear to render this issue moot, we agree and remand for resentencing. A trial court need not make a factual determination of a particular defendant's actual life expectancy, *id.* at 329, and a defendant can reasonably be expected to live into his eighties, *People v Schollaert,* 194 Mich App 158, 171; 486 NW2d 312 (1992). Nonetheless, despite its reliance on *Moore,* the trial court explicitly intended defendant's sentence of a term of years to be a life sentence from which no release would be possible. We find resentencing to be required.

The convictions are affirmed. We remand for resentencing with regard to the assault convictions.