## PEOPLE v JACOBSEN

Docket No. 151849. Submitted September 13, 1993, at Lansing. Decided May 16, 1994, at 9:35 A.M. Leave to appeal sought.

Sheri L. Jacobsen pleaded guilty in the Grand Traverse Circuit Court of operating a motor vehicle while under the influence of intoxicating liquor, third offense, and was sentenced to a prison term of forty to sixty months. The defendant had moved for appointment of an expert witness at public expense for the purpose of testimony concerning the reliability of Breathalyzer test results where there was a delay in the administering of the test, in the hope of supporting her claim that the test had not been administered within a reasonable time after her arrest. The defendant also moved to suppress the Breathalyzer results. The court, Phillip E. Rogers, Jr., J., denied the motions, stating that the defendant had failed to make a prima facie showing of the reasonableness of the request for an expert witness, as required by MCL 775.15; MSA 28.1252. The defendant appealed.

The Court of Appeals *held:*

1. A trial court must appoint an expert witness for an indigent defendant at public expense where the defendant makes a sufficient showing that the defense cannot safely proceed to trial without the proposed witness. Because this indigent defendant could not have proceeded safely to trial without the appointment of an expert witness to testify concerning the reliability of the Breathalyzer results, the defendant made a sufficient showing that appointment of an expert witness was necessary. Accordingly, it was an abuse of discretion for the trial court to refuse to appoint the requested expert witness.

REFERENCES

Am Jur 2d, Criminal Law § 1006; Expert and Opinion Evidence §§ 19, 272.

Right of indigent defendant in criminal case to aid of state by appointment of investigator or expert. 34 ALR3d 1256.

Right of indigent defendant under Rule 17(b) of the Federal Rules of Criminal Procedure to appearance of witnesses necessary to adequate defense. 42 ALR Fed 233.

2. Because a remand for further proceedings is required, it is unnecessary to address the defendant's sentencing issues.

Reversed and remanded.

TAYLOR, J., dissenting, stated that, by statute, a defendant seeking appointment of an expert witness must establish that the defense cannot proceed safely to trial without the proposed witness. The defendant's mere claim that the witness was necessary, without showing what the testimony of the witness would be and how it would benefit the defense, fails to establish a nexus between the facts of the case and the request for the expert witness. The majority has converted the statute's discretionary determination of the trial court into a mandate on the trial court.

CRIMINAL LAW — EXPERT WITNESSES — INDIGENT DEFENDANTS — JUDICIAL DISCRETION.

It is an abuse of discretion for a trial court to refuse to appoint at public expense an expert witness who could testify concerning Breathalyzer results where an indigent defendant is seeking to suppress as evidence those results on the basis that the test was not administered within a reasonable time of the defendant's arrest and, therefore, that the results are not reliable (MCL 775.15; MSA 28.1252).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Dennis M. LaBelle,* Prosecuting Attorney, and *Alan R. Schneider,* Chief Assistant Prosecuting Attorney, for the people.

*Robert L. Levi,* for the defendant.

Before: HOLBROOK, JR., P.J., and FITZGERALD and TAYLOR, JJ.

HOLBROOK, JR., P.J. Defendant pleaded guilty in the Grand Traverse Circuit Court of operating a motor vehicle while under the influence of intoxicating liquor, third offense, MCL 257.625(6); MSA 9.2325(6), and was sentenced to forty to sixty months' imprisonment. Defendant appeals as of right. We reverse and remand.

At approximately 8:30 P.M. on July 30, 1991, a state police officer arrested the defendant, suspecting that she was driving while intoxicated. The state police officer took defendant to a state police post and then to a county jail. At the jail, a deputy sheriff administered the first Breathalyzer examination of defendant at 10:02 P.M., and it revealed that defendant's blood alcohol content was 0.17 percent. A second Breathalyzer examination of defendant was taken at 10:11 P.M. and it revealed that defendant's blood alcohol content was 0.18 percent.

Defendant's court-appointed attorney moved for the appointment and payment of an expert witness to testify concerning the reliability of the test results in light of the delay between the time of the initial stop of defendant and the administering of the tests, the rate of alcohol metabolism, and other factors. Defendant's attorney also moved to suppress the results of the Breathalyzer tests. The trial court denied the motions, stating in part that defendant failed to present a "prima facie showing" of the reasonableness of the request for an expert witness. The trial court stated that it had no special knowledge regarding the metabolism of alcohol in the human body or how the delay in administering the tests was unreasonable.

On appeal, defendant first argues that the trial court erred in denying her motion for the appointment and payment of an expert witness to challenge the reliability of the Breathalyzer tests. We note that this issue was preserved by defendant's conditional plea. MCR 6.301(C)(2); *People v Reid,* 420 Mich 326; 362 NW2d 655 (1984). This Court reviews a trial court's decision whether to appoint an expert witness for an abuse of discretion. *In re Attorney Fees of Klevorn,* 185 Mich App 672, 678; 463 NW2d 175 (1990).

In order to have the trial court appoint an expert witness for an indigent defendant at public expense, the defendant must show "to the satisfaction of the judge presiding over the court wherein such trial is to be had . . . [that] he cannot safely proceed to a trial [without the proposed witness]." MCL 775.15; MSA 28.1252; *People v Miller,* 165 Mich App 32, 47; 418 NW2d 668 (1987), (*On Remand*) 186 Mich App 660; 465 NW2d 47 (1991). We believe that this indigent defendant could not have safely proceeded to trial without the appointment of an expert witness to testify about the reliability of Breathalyzer tests following a delay between the time of arrest and the administering of the test.

The results of Breathalyzer tests are admissible as evidence provided the prosecution meets four foundational requirements: (1) the operator administering the test is qualified; (2) the proper method or procedure was followed in administering the test; (3) the test was performed within a reasonable time after the arrest; and (4) the testing device was reliable. *People v Kozar,* 54 Mich App 503, 509, n 2; 221 NW2d 170 (1974). This Court in *Kozar, supra* at 508, further held:

> [A] defendant's blood alcohol content at the time of the offense should be regarded as equivalent to his blood alcohol content as determined by a subsequent chemical test *provided such test was administered within a reasonable time after the defendant's arrest.* [Emphasis added.]

The reasonableness of the time between the defendant's arrest and the administering of the test is particularly important in the present case, because the defendant was charged with OUIL, third offense, an offense punishable by imprisonment for up to five years. MCL 257.625(6)(d); MSA

9.2325(6)(d); see also *People v Krulikowski,* 60
Mich App 28; 230 NW2d 290 (1975). We further
note that the defendant indeed was sentenced to
forty to sixty months' imprisonment.

In *People v Schwab,* 173 Mich App 101; 433
NW2d 824 (1988), the prosecution argued that the
trial court erred in determining that the Breatha-
lyzer test results were not sufficiently probative of
the defendant's blood alcohol level at the time of
his arrest because of the delay in administering
the tests. This Court held that the decision
whether a sufficient foundation has been laid for
the admission of the evidence, including the rea-
sonableness of the time between the arrest and the
time of administering the test, is left to the discre-
tion of the trial court. *Id.* at 103.

In the present case, defendant filed a motion for
the appointment of an expert witness in order to
challenge the foundational requirement of reason-
ableness in the delay between the time of arrest
and the time of administering the tests. Defendant
argued that the delay was unreasonable because it
rendered the test results unreliable. Accordingly,
the defendant asked for the appointment of an
expert to testify with respect to this issue. How-
ever, the trial court denied the request, reasoning
that defendant failed to make a sufficient offer of
proof of the delay's unreasonableness.

In effect, the trial court placed the proverbial
cart before the horse by recognizing that the delay
in administering the test might affect the test's
accuracy in denoting defendant's blood alcohol
level at the time she operated her car and yet
disallowing defendant the opportunity to show
how the circumstances rendered the test results
unreliable. Although the prosecution is not re-
quired to relate the blood test results back to the
time of the improper driving, *Kozar, supra* at 508,

the time between the arrest and the administering
of the test must be reasonable to ensure that the
test results accurately reflect the defendant's blood
alcohol content at the time she was arrested.
Indeed, in *Schwab, supra* at 103-104, the trial
court heard extensive testimony from experts from
both sides pertaining to the reasonableness of the
delay in administering the Breathalyzer tests. In
addition, this Court in *Kozar, supra* at 509, stated
that a defendant may introduce into evidence
expert witness evidence interpreting the results of
the Breathalyzer test as it relates to the time of
the arrest.

Because the trial court should consider the evi-
dence, including the metabolism of alcohol and
absorption rates, concerning the reliability of the
Breathalyzer test results when exercising its dis-
cretion to determine whether the test was per-
formed within a reasonable time after the arrest,
we believe that the trial court is required to
appoint an expert witness on this matter for an
indigent defendant. Contrary to the opinion of the
dissenting judge, we believe that the Legislature
does require a defendant to show that the facts of
the case warrant appointing an expert witness. We
conclude that the defendant in the case sub judice
provided sufficient evidence to require the trial
court to appoint an expert witness by showing that
the delay was unreasonable and, as a result, the
Breathalyzer did not give a reliable indication of
her blood alcohol content at the time of the of-
fense. Absent a showing that the delay was unrea-
sonable, the trial court retained the discretion to
deny the request for an expert witness. See
*Schwab, supra* at 104-105. The dissenting judge
concludes that our decision results in a policy
disaster, because it will impede the disposition of
criminal matters on the merits. On the contrary,

we believe it to be sound public policy to require the appointment of an expert witness to an indigent defendant where it has been shown that the Breathalyzer test results might be unreliable because of the delay between arrest and the administering of the test and where the trial court admits that it has no special knowledge to decide the issue. Thus, the trial court in this case abused its discretion in denying the indigent defendant's motion for the appointment of an expert witness.

Given our resolution of the defendant's first issue, it is unnecessary for us to address the sentencing issues she raises on appeal.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

FITZGERALD, J., concurred.

TAYLOR, J. *(dissenting).* I respectfully dissent.

Fundamentally, this case involves the construction of a statute that authorizes the payment of expert fees in indigent cases. This statute states:

> If any person accused of any crime or misdemeanor, and about to be tried therefor in any court of record in this state, shall make it appear to the satisfaction of the judge presiding over the court wherein such trial is to be had, by his own oath, or otherwise, *that there is a material witness in his favor within the jurisdiction of the court, without whose testimony he cannot safely proceed to a trial,* giving the name and place of residence of such witness, and that such accused person is poor and has not and cannot obtain the means to procure the attendance of such witnesses at the place of trial, the judge in his discretion may, at a time when the prosecuting officer of the county is present, make an order that a subpoena be issued from such court for such witness in his favor, and

that it be served by the proper officer of the court. And it shall be the duty of such officer to serve such subpoena, and of the witness or witnesses named therein to attend the trial, and the officer serving such subpoena shall be paid therefor, and the witness therein named shall be paid for attending such trial, in the same manner as if such witness or witnesses had been subpoenaed in behalf of the people [MCL 775.15; MSA 28.1252; emphasis added.]

The heart of this statute is that a defendant must show to the presiding judge that "he cannot safely proceed to a trial" without the proposed witness. It is a requirement that he show a nexus between the facts of the case and the need for an expert. It is only when such a showing has been made by the requesting party that the court can give relief.

It was this approach that the trial judge used. He held that what was lacking, for the defendant to prevail, was the required nexus between the facts and the need for an expert. The progress of the motion and the in-court colloquy make this clear. Defense counsel told the court that he wanted an expert to testify only with respect to the question whether the delay between the initial stop and the administering of the tests rendered the test results unreliable. The court asked if defendant was making an argument that there was not continuous custodial observation, thus providing an opportunity to consume more alcohol between the arrest and the tests. The court also asked defense counsel what were the predicate facts for an expert's opinion regarding the effect of the delay and what, under the best circumstances, could defense counsel expect a witness to say. Defense counsel merely reiterated that it was the unreasonableness of the delay itself that would be

the basis for the expert. The court said that without some prima facie showing of some nexus between the facts of the case and the request for the expert, it would deny the motion without prejudice. It went on to say that it would lean strongly toward granting the request if defense counsel could make that showing through a learned treatise and affidavit. The trial court was then focusing, as was its duty, on the need for something more than mere delay. The court was asking: What difference did the delay make? That is the correct inquiry. The majority has obliterated, by its decision, the need for this preliminary "so what" standard. The defense must show not just facts, but that an expert using those facts might reach a conclusion supporting the defendant's argument that the delay was unreasonable.

The majority's is an arguable position, and a policy maker could well adopt it. Unfortunately for the proponents of this position, the policy maker in our system of government, the Legislature, did not adopt it. Instead, it adopted a policy that perhaps requires, to use the majority's metaphor, that the cart be placed before the horse. It is the Legislature's right to do this. Absent a demonstration that such a policy choice is unconstitutional, which no one claims here, we have no basis, nor is one tendered by the majority, for revising, reworking, or even repealing the Legislature's decision.

The majority's decision is also flawed on the basis that, by its rewriting of the statute, it has now made mandatory, not discretionary, the appointment of experts on the basis of a mere request. This will undoubtedly be utilized by many, if not all defendants, at great cost to the taxpayers. Their hope will be that this cost and aggravation will result in an increased receptivity to

disposal of cases on the basis of avoidance of that cost and aggravation rather than on the merits. Much of this has always gone on, but is it advisable to increase it? I think not. In fact, such an analysis may be why the statute was written as it was rather than as the majority has now rewritten it.

In summary, then, I consider this decision to be an unconstitutional usurpation of the powers of the Legislature.[1] We have declined to acknowledge the clear import of the language the Legislature used. In doing this, we have turned the statute on its head. It is axiomatic that such a course of action is improper. As Michigan Supreme Court Justice Thomas M. Cooley stated in 1 Cooley, Constitutional Limitations (8th ed), p 124:

> What a court is to do, therefore, is to declare the law as written, leaving it to the people themselves to make such changes as new circumstances may require.

I also consider the decision to be ill-advised policy because the implications of this will be to further impede the disposition of criminal matters on the merits.

I would affirm.

[1] For general background, see The Federalist No 78 (A. Hamilton).