PEOPLE v WAGER

Docket No. 201457. Submitted May 6, 1998, at Grand Rapids. Decided
December 1, 1998, at 9:00 A.M. Leave to appeal sought.

Chad M. Wager was convicted by a jury in the Kalamazoo Circuit
Court, Richard R. Lamb, J., of operating a motor vehicle while
under the influence of intoxicating liquor causing serious injury. He
appealed, alleging that the court erred in admitting blood alcohol
test results into evidence. The defendant claimed that the delay
between the time of the crime and the administration of the blood
test, between two hours and eight minutes and two hours and
twenty minutes, rendered the test results unreliable.

The Court of Appeals *held*:

1. The prosecution must establish that there has not been unrea-
sonable delay between the time of the offense and the administra-
tion of the test.

2. The prosecution failed to offer any evidence that the test
results accurately reflected the defendant's blood alcohol level at
the time of the offense. The only expert testimony was that of the
defendant' s witness, who stated that the delay rendered the test
results unreliable as an indicator of the defendant's blood alcohol
level at the time of the offense. There was no evidence on which
the court could base its decision that the test results were reliable
and that the delay was therefore reasonable. The prosecution failed
to carry its burden of proof. The court abused its discretion in
determining that the delay was reasonable. It cannot be said that it
is highly probable that the error did not affect the outcome at trial.

Reversed.

SMOLENSKI, J., dissenting, stated that the court's stated reasoning
in rejecting the opinion testimony of the defendant's expert witness
cannot be faulted. The prosecution is not required to introduce
expert testimony to interpret and relate the results of chemical
tests back to the time of the alleged offense. The court's determina-
tions to reject the expert's testimony and to find that the time
parameters alone provided an adequate basis for its conclusion that
the test was performed within a reasonable time were reasonable.
The foundational requirements were met, and the test results were
admissible. The conviction should be affirmed. Even if evidentiary

error occurred and it was not harmless error, the matter should be remanded for a new trial at which the blood alcohol test results would not be admissible.

1. AUTOMOBILES — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF LIQUOR — EVIDENCE — CHEMICAL TEST RESULTS.

The prosecution must meet four foundational requirements in order for chemical test results to be admitted into evidence in a trial for operating a motor vehicle while under the influence of intoxicating liquor causing serious injury; the prosecution must prove that the operator that administered the test was qualified, the proper method or procedure was followed in administering the test, the test was performed within a reasonable time after the offense, and the testing device was reliable; whether the delay was reasonable is a determination left to the discretion of the trial court (MRE 104[a]; MCL 257.625[5]; MSA 9.2325[5]).

2. AUTOMOBILES — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF LIQUOR — EVIDENCE — CHEMICAL TEST RESULTS.

The prosecution's failure to establish the requisite foundation for admission of chemical test results precludes the admission of the test results into evidence and is not relevant merely to the weight that the trier of fact may assign the test results in a trial for operating a motor vehicle while under the influence of intoxicating liquor causing serious injury (MCL 257.625[5]; MSA 9.2325[5]).

3. AUTOMOBILES — OPERATING A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF LIQUOR — EVIDENCE — CHEMICAL TEST RESULTS.

A defendant's blood alcohol content at the time the defendant allegedly operated a motor vehicle while under the influence of intoxicating liquor causing serious injury may be considered the equivalent of the blood alcohol content at the time of a subsequent blood alcohol test where the four foundational requirements for the admission of the test results are met; the prosecution need not relate back through expert testimony the results of the test to the time of the offense as a condition precedent to the admission of the evidence where the test was performed within a reasonable amount of time after the offense (MCL 257.625[5]; MSA 9.2325[5]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *James J. Gregart*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

*Butler, Durham & Willoughby* (by *Anthony R. Toweson*), for the defendant.

Before: SAWYER, P.J., and KELLY and SMOLENSKI, JJ.

KELLY, J. Defendant was convicted by a jury of operating a motor vehicle while under the influence of intoxicating liquor causing serious injury, MCL 257.625(5); MSA 9.2325(5). He was sentenced to five years' probation with the first forty-five days to be served in the county jail. Defendant appeals his conviction as of right. We reverse.

On appeal, defendant claims that the trial court erred in admitting blood alcohol test results into evidence. We agree.

The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v Lugo*, 214 Mich App 699, 709; 542 NW2d 921 (1995); *Price v Long Realty, Inc*, 199 Mich App 461, 466; 502 NW2d 337 (1993). An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *People v McAlister*, 203 Mich App 495, 505; 513 NW2d 431 (1994).

Defendant was charged and convicted under MCL 257.625(5); MSA 9.2325(5), which makes it a felony to operate a motor vehicle while under the influence of intoxicating liquor and cause serious impairment of a body function to another person. Defendant claims that the trial court abused its discretion in admitting the chemical test results because the delay between the time of the crime and the administration of the test rendered the test results unreliable. The parties

agree that the delay in this case was between two hours and eight minutes and two hours and twenty minutes. The issue, then, is whether the test results remain sufficiently reliable and accurate after such a delay to allow the presentation of that evidence to the jury to be considered in deciding whether defendant was intoxicated at the time he operated a motor vehicle and caused serious injury to another person.

In order for chemical test results to be admitted into evidence, the prosecutor must meet four foundational requirements: (1) the operator administering the test was qualified, (2) the proper method or procedure was followed in administering the test, (3) the test was performed within a reasonable time after the arrest, and (4) the testing device was reliable. *People v Jacobsen*, 205 Mich App 302, 305; 517 NW2d 323 (1994), rev'd 448 Mich 639; 532 NW2d 838 (1995)[1]; *People v Kozar*, 54 Mich App 503, 509, n 2; 221 NW2d 170 (1974). The only foundational requirement at issue in this case is whether the blood alcohol test was administered within a reasonable amount of time. Whether the delay was reasonable is a determination left to the discretion of the trial court. *Jacobsen, supra*, 205 Mich App 306; MRE 104(a).

According to this Court in *Kozar, supra* at 508, a defendant's blood alcohol content at the time of the offense should be considered the equivalent of the blood alcohol content at the time of the test, provided the four prerequisites to the admission of the evi-

---

[1] The Supreme Court reversed this Court's decision in *Jacobsen* that the trial court should have appointed an expert. The Supreme Court ruled that the defendant did not make the requisite threshold showing of need for the expert. However, the Supreme Court's ruling does not disturb this Court's discussion of the foundational requirements and the reasonableness inquiry relating to the admissibility of chemical test results.

dence are met. See also *Jacobsen, supra*, 205 Mich
App 305. If the test was performed within a reasona-
ble amount of time, the prosecution need not relate
back through expert testimony the results of the test
to the time of the offense as a condition precedent to
the admission of the evidence. *Kozar, supra* at 507.
This Court in *Jacobsen, supra*, 205 Mich App 306-307,
explained that the requirement that the blood alcohol
test be performed within a reasonable amount of time
after the arrest is to ensure that the test results accu-
rately reflect the defendant's blood alcohol content at
the time he was arrested. In *People v Krulikowski*, 60
Mich App 28, 33; 230 NW2d 290 (1975), this Court
stated that a failure to adduce evidence of the founda-
tional requirements "precludes the *admission* of the
test results into evidence, and does not go merely to
the *weight* which the trier of fact may accord the test
results" (emphasis in original). This requirement,
however, is not meant to "place the trial bench in a
judicial straitjacket with respect to the laying of a
foundation as a condition precedent to the admission
of evidence." *Id.* Rather, the trial bench still pos-
sesses considerable discretion regarding the adequacy
of the foundation in any given case, and its determi-
nation should not be lightly set aside. *Id.*

The parties rely on *People v Schwab*, 173 Mich App
101, 103; 433 NW2d 824 (1988), where this Court reit-
erated the four prerequisites to the admission of
chemical blood test results. As in this case, the only
error claimed by the defendant in *Schwab* related to
the reasonable time prerequisite. *Id.* Defendant relies
on *Schwab* because there, the Court upheld the dis-
trict court's ruling that a two- hour and thirteen-
minute delay in administering the chemical test was

unreasonable and precluded admission of the test results. *Id.* at 105. Defendant contends that the two-hour and eight-minute or the two-hour and twenty-minute delay in this case is likewise unreasonable.[2]

In *Schwab,* the defendant was arrested and Breathalyzer tests were administered approximately two hours and fifteen minutes after he was first stopped by the police. *Id.* at 102. The defendant moved to suppress the results of the tests and the district court granted his motion. The people sought leave to appeal in the circuit court. The circuit court granted leave and ordered the district court to conduct an evidentiary hearing to determine the effect of the passage of time on the reliability of the Breathalyzer tests. The district court then heard extensive expert testimony regarding the rate at which alcohol is metabolized, how likely it is to be absorbed into the stomach, and the many variables that can have an effect on the rate of absorption and metabolism. *Id.* at 103-104. The district court further heard extensive testimony relating to the reasonableness of the delay in administering the Breathalyzer tests and concluded that the tests were not sufficiently probative of the defendant's blood alcohol level at the time of his arrest. The circuit court affirmed. This Court also affirmed, finding that the district court did not abuse its discretion in suppressing the results of the Breathalyzer tests, but declining the parties' invitations to establish a bright-line rule that would include or exclude the results of a Breathalyzer test depending on the time delay

---

[2] We do not decide that the mean delay here is one minute afoul of the *Schwab* perimeter.

before the test is given. Instead, this Court stated that reasonableness varies from one factual setting to the next and must therefore be considered case by case. *Id.* at 105.

Under *Kozar, supra, Schwab, supra,* and *Jacobsen, supra,* the prosecution must establish that there has not been unreasonable delay in the time between the arrest and the administration of the test. In these three cases, this Court appears to refer to the time of arrest and the time of the offense interchangeably. Presumably, this Court does not distinguish the two events because both occur close in time under the facts of each case. Notably, the offense of operating a motor vehicle while under the influence of intoxicating liquor makes it illegal to be intoxicated *at the time of driving,* MCL 257.625(5); MSA 9.2325(5), not at the time of arrest. Therefore, the proper focus of the reasonable time delay inquiry begins with the time of the offense.

In the present case, the trial court agreed that the appropriate inquiry relates to the time of defendant's operation of the motor vehicle and the time the test was administered. Given this time frame, the trial court ruled that the delay in this case was reasonable. In making its decision, the trial court considered the deposition testimony of defendant's expert, Dr. Dennis Simpson, an expert in the area of physiology of alcohol absorption and elimination, regarding how alcohol is absorbed and eliminated by the body over time. Dr. Simpson testified that the blood alcohol test taken at 12:50 A.M. on September 17 had no scientifically probative value with regard to defendant's blood alcohol content during the period between 10:30 P.M. and 10:42 P.M. the night before. He stated that there

was no way to determine whether defendant's blood
alcohol content was above 0.09 percent between
10:30 P.M. and 10:42 P.M. given the data available in this
case. Also, Dr. Simpson could not determine whether
defendant's blood alcohol level was rising or falling
during the over two-hour delay. According to Dr.
Simpson, the range in which a person's blood alcohol
content increases after consuming the last drink is
somewhere between fifteen minutes and four hours
and two minutes.[3] In order for him to determine

---

[3] During his deposition, Dr. Simpson answered questions relating to the
following stipulated fact pattern: Defendant was involved in a motor vehi-
cle accident on September 16, 1995, between 10:30 P.M. and 10:42 P.M.; an
officer administered a preliminary breath test at approximately 12:27 A.M.
the following morning, with a result of 0.09 percent; defendant's blood
was drawn at approximately 12:50 A.M. for a blood alcohol test; and the
blood alcohol test result indicated 0.09 percent blood alcohol. Given these
facts, Dr. Simpson concluded that the blood alcohol test level of 0.09 at
12:50 A.M. was not, within a reasonable degree of scientific certainty, pro-
bative of defendant's blood alcohol level during the time between 10:30
P.M. and 10:42 P.M. on September 16, 1995. According to Dr. Simpson, under
the facts of this case, the only conclusion that could be drawn from a
blood alcohol level of 0.09 at 12:50 A.M. is that the blood alcohol level was
0.09 at 12:50 A.M. Dr. Simpson's testimony at trial was substantively the
same as that given during his deposition. The trial court stated its prob-
lem with the testimony of defendant's expert witness as follows:

    The difficulty I have with—with the premise being posed here
today, is this: If . . . I were to take the testimony of Dr. Simpson,
accept it . . . completely then it is virtually impossible to ever get
any information. He says it's impossible to relate it back. Well, the
. . . Rules of Evidence are predicated on probative value. He may
feel, Dr. Simpson may feel that it's scientifically impossible. But, we
do not deal with scientific probabilities on the admissibility of evi-
dence, nor on the burden of proof in a criminal case, which is
beyond a reasonable doubt. And, that word, [r]easonable i[s] the
burden that a jury has to use in establishing the elements of the
offense, is built into the law of evidence also.

Thereafter, the trial court ruled that the blood alcohol test results were
admissible, stating that the jurors could weigh the testimony of Dr. Simp-
son regarding whether the test results were probative of defendant's blood
alcohol level at the time of the crime.

where a person falls within this range, he would need to know much more than the individual's height, age, weight, and gender. He would need to know the results of liver function and gastrointestinal tests, what the person ate during that time, what other drugs the person was consuming, the effects of an accident or trauma on the individual, the specific alcohol that was consumed, the rate at which it was consumed, and several other variables. Additionally, Dr. Simpson stated that the preliminary breath test administered to defendant at 12:27 A.M. on September 17 with a result of 0.09 percent was not probative of the blood alcohol level because it is a different measurement from the blood test and does not have the reliability that a blood test in a medical setting would have. The only conclusion Dr. Simpson could draw from the preliminary breath test and the blood test was that defendant had been consuming alcohol that night and at 12:50 A.M. on September 17, defendant had a blood alcohol level of 0.09 percent.

Notwithstanding the undisputed expert testimony, the court ruled that the blood alcohol test results were admissible because the delay was reasonable. The court stated that jurors could weigh the testimony of Dr. Simpson regarding whether the test results were probative of defendant's blood alcohol level at the time of the improper driving.

The prosecution claims that the trial court correctly determined that the suppression argument was one of weight by finding that the chemical test results were probative and valuable to the jury in its review of evidentiary proofs. However, this position is contrary to the holding in *Krulikowski, supra* at 33, in which this Court expressly stated that failure to establish the

requisite foundation for admission of the chemical test results precludes the *admission* of the test results into evidence, and is not relevant merely to the *weight* that a trier of fact may assign the test results.

The prosecution in this case failed to offer any evidence that the test results accurately reflected defendant's blood alcohol level at the time of the offense. The only expert testimony offered in the matter was that of defendant's expert, Dr. Simpson, whose uncontroverted testimony provided that the two-hour and eight-minute or the two- hour and twenty-minute delay rendered the test results unreliable as an indicator of defendant's blood alcohol level at the time of the offense. Even given the trial court's rejection of the expert's testimony that the delay was unreasonable, there is no evidence in the record on which the court could base its decision that the test results were reliable and the delay was therefore reasonable. Because the prosecution did not offer any evidence of reliability given the delay, the prosecution failed to carry its burden of proof. See *Krulikowski*, *supra* at 33. An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made. *McAlister*, *supra* at 505. Here, the trial court abused its discretion because there is no justification in the record for the trial court's determination that the delay was reasonable.

We have considered the issue whether the error was harmless but cannot say that it is highly probable that the error did not affect the outcome at trial. See *People v Harris*, 458 Mich 310, 320; 583 NW2d 680

(1998); *People v Mitchell (On Remand)*, 231 Mich App 335; 586 NW2d 119 (1998).

Reversed.

SAWYER, P.J., concurred.

SMOLENSKI, J. (*dissenting*). I respectfully dissent. I would affirm defendant's conviction. The issue presented is whether the trial court abused its discretion in denying defendant's pretrial motion to suppress defendant's blood alcohol test results. This evidence was thereafter admitted at trial pursuant to the parties' stipulation.

In a prosecution for operating a vehicle while under the influence of intoxicating liquor, there are four foundational requirements to the admission of the results of a chemical test of blood alcohol, one of which is "that the test was performed within a reasonable time after the arrest." *People v Kozar*, 54 Mich App 503, 509, n 2; 221 NW2d 170 (1974). A failure to adduce evidence of the foundational requirements precludes the admission of the test result into evidence. *People v Krulikowski*, 60 Mich App 28, 32-33; 230 NW2d 290 (1975). The determination whether the foundational requirements have been met is for the trial court and is consigned to its discretion. *People v Schwab*, 173 Mich App 101, 104; 433 NW2d 824 (1988).

In this case, the record from the hearing regarding the motion to suppress consisted of the limited stipulated facts concerning the relevant sequence of events, including the approximate time defendant last operated his motor vehicle and the time defendant's blood was drawn, and the opinion testimony of defendant's expert concerning these bare-bones facts.

The trial court rejected the expert's opinion testimony, reasoning that if it "were to take the testimony of [defendant's expert], accept it . . . completely then it is virtually impossible to ever get any information." The court also noted that "to accept the premise being postured here would mean that every time there's a driving incident or an accident there would have to be portable medical teams, portable labs on the site, investigation, and that's just not the statutory scheme." I cannot fault the court's stated reasoning in rejecting the expert's opinion testimony. Moreover, where no evidence was adduced concerning this particular defendant's body weight, food consumption, and other pertinent factors that might have contributed to the alcohol elimination rate, I question how the expert's testimony could even assist the court in making an accurate determination whether the test was performed within a reasonable time after defendant last drove his vehicle. Cf. *People v Prelesnik*, 219 Mich App 173, 180; 555 NW2d 505 (1996).

Having rejected the expert's opinion testimony, the remaining record evidence consisted of the stipulated facts indicating that defendant's blood was drawn, at most, approximately 140 minutes after defendant last operated his vehicle. The court concluded that "the time parameters presented here are those which indicate that the test was taken within a reasonable time of the driving." A trial court possesses considerable discretion in determining the adequacy of the foundational requirements in any given case, and its determination in this regard should not be lightly set aside. *Krulikowski, supra* at 33. Moreover, "the prosecutor is not required to introduce expert testimony to interpret and relate the results of chemical tests . . . back

to the time of the alleged offense . . . ." *Kozar, supra* at 509.

Finding nothing inherently unreasonable solely in the fact of a 140-minute lapse of time between the time defendant last operated his vehicle and the drawing of his blood, I am unwilling to second-guess the trial court's considerable discretion in rejecting the expert's opinion testimony and then determining that the time parameters alone provided an adequate basis for its conclusion that the test was performed within a reasonable time after defendant last operated his vehicle. See *Schwab, supra* at 104 (noting that "[r]easonableness is a somewhat amorphous concept"). Because the foundational requirement was met, the test results were admissible. *Krulikowski, supra.* Accordingly, the trial court did not abuse its discretion in denying the motion to suppress, and the test results were properly admitted at trial pursuant to the parties' stipulation. *People v Sawyer,* 222 Mich App 1, 5; 564 NW2d 62 (1997). Because I conclude that the trial court did not abuse its discretion in denying the motion to suppress, I do not address whether harmless error occurred. However, even assuming that evidentiary error occurred in this case and that the error was not harmless, I dissent from the majority's failure to remand this case for a new trial at which the blood alcohol test results would not be admitted.