*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY WILLIAM MARTIN,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 344845
Wayne Circuit Court
LC No. 17-009263-01-FH

Before: CAMERON, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Anthony William Martin, was convicted by a jury of use of false pretenses with intent to defraud involving $1,000 or more but less than $20,000 ("false pretenses"), MCL 750.218(4)(a), and he was sentenced to two years' probation.[1] Martin appeals his conviction, and we affirm.

## I. FACTUAL BACKGROUND

This case arises out of an act of vandalism that occurred at New Cadillac Square Apartments ("Cadillac Square") in February 2017 and Martin's subsequent reliance on that act of vandalism as a justification for prematurely terminating his lease with Cadillac Square.

Beginning in September 2016, Martin rented an apartment in Cadillac Square for a term of one year. Martin's apartment was located on the twelfth floor of the building, and the monthly rent was $700. Martin's lease with Cadillac Square included a clause that stated that, upon an early termination of the lease, Martin would be responsible for rent throughout the remainder of the lease term, or until the apartment was re-let to a new tenant.

---

[1] The jury acquitted Martin of malicious destruction of a building involving $200 or more but less than $1,000, MCL 750.380(4)(a).

On the morning of February 15, 2017, a maintenance worker at Cadillac Square noticed freshly spray-painted graffiti on the hallway walls and in the twelfth floor trash room which read, in part, "KKK, die n*****s or go home, Trump." The maintenance worker noted that he saw Martin on the twelfth floor around that time. The maintenance worker later discovered Ku Klux Klan recruitment flyers taped to the walls throughout Cadillac Square. Spray-painted graffiti was also discovered on the walls of at least six other floors in the building and in the stairwells. There was no security camera footage of the vandalism, and there were no eye witnesses who observed the vandalism occur. Law enforcement was contacted.

On the same day that the vandalism occurred, Martin submitted a written 30-day notice to a leasing agent, stating that he wanted to prematurely terminate his lease because he no longer felt safe living in Cadillac Square due to the racist nature of the graffiti and the flyers. The director of operations at Cadillac Square approved Martin's request to prematurely terminate the lease with no penalty based on Martin's claim that he felt intimidated. Martin's apartment was re-let to a new tenant approximately four months later. The lost rent for the four months that the apartment was vacant totaled $2,800.

Through its investigation, law enforcement determined that Martin's DNA was present on a piece of tape that was used to hang one of the recruitment flyers on the twenty-first floor. It was also determined that Martin's fingerprints were present on that same flyer. However, the spray paint cans used in the vandalism were never located. Martin's personal computer and printer were tested, and law enforcement determined that the flyers did not originate from either one.

Martin was charged with false pretenses and malicious destruction of a building involving $200 or more but less than $1,000, MCL 750.380(4)(a) ("malicious destruction").[2] At trial, Martin's former girlfriend testified that Martin admitted to her that he had spray-painted graffiti in areas of Cadillac Square and hung up the flyers after he lost his job because he did not want an eviction on his record. Martin's former girlfriend further testified that Martin told her that he wore gloves; however, he reported that he had to remove his gloves in order to hang some of the flyers. She also testified that Martin told her that he printed the flyers using a public computer and a public printer and that he had disposed of the spray paint cans "far away" from Cadillac Square.

Martin testified in his own defense at trial. He testified that, on February 15, 2017, he was visiting another resident on the twenty-first floor of Cadillac Square. According to Martin, while he was on the twenty-first floor, he removed a KKK recruitment flyer from the wall and dropped it on the floor. Martin denied that he told his former girlfriend that he vandalized Cadillac Square.

The jury convicted Martin of false pretenses but acquitted Martin of malicious destruction of a building. Martin was sentenced to a term of probation on the false pretenses conviction, and this appeal followed.

---

[2] The director of operations estimated that it cost $636.66 to paint over the spray-painted graffiti.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Martin argues on appeal that there was insufficient evidence presented at trial to establish beyond a reasonable doubt that Martin used a false pretense to intentionally defraud Cadillac Square in an amount exceeding $1,000. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution and [this court] will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Bosca*, 310 Mich App 1, 16; 871 NW2d 307 (2015) (quotation marks and citation omitted). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Id.* (quotation marks and citation omitted). "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Id.* (quotation marks and citation omitted).

In order to prove the elements of false pretenses under MCL 750.218(4)(a), the prosecution must prove the following:

> (1) the defendant must have used a pretense or made a false statement relating to either past or then existing facts and circumstances, (2) at the time the pretense was used the defendant must have known it to be false, (3) at the time the pretense was used the defendant must have intended to defraud someone, (4) the accuser must have relied on the false pretense made by the defendant, (5) because of this reliance that person must have suffered the loss of some money or other valuable thing, and (6) the property obtained by the defendant must have had a fair market value of [$1,000 or more but less than $20,000]. [*People v Lueth*, 253 Mich App 670, 680-681; 660 NW2d 322 (2002).]

A "false pretense" is defined as "a false or fraudulent representation, writing, communication, statement, or message, communicated by any means to another person, that the maker of the representation, writing, communication, statement, or message knows is false or fraudulent." MCL 750.218(11).

We conclude that there was sufficient evidence presented that Martin used a false pretense or made a false statement relating to either past or existing facts and circumstances. At trial, Martin's 30-day notice to vacate his apartment was read into evidence. In the 30-day notice, Martin wrote that he no longer felt safe in his own home and that he did not wish to live in an apartment complex where he felt that his life was in danger. The prosecution presented evidence that this writing was false by calling expert and lay witnesses to testify as to Martin's

involvement in the vandalism and the distribution of the flyers. In doing so, the prosecution presented evidence that Martin was present in Cadillac Square at the time the vandalism occurred, that Martin's fingerprints were found on a flyer accompanying the vandalism, that Martin's DNA was found on the tape used to hang a flyer, and that Martin had admitted to his former girlfriend that he vandalized Cadillac Square. This evidence supports that Martin could not have believed that his life was in danger at the time he submitted the 30-day notice and that he used a false pretense by making this representation. Therefore, taking this evidence in the light most favorable to the prosecution, the evidence was sufficient to establish that Martin used a false pretense.

With respect to whether the prosecution presented sufficient evidence that Martin made a false writing with knowledge of its falsity and with the intent to defraud another, "[m]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Bosca*, 310 Mich App at 16 (quotation marks and citation omitted). At trial, the prosecution presented evidence that Martin intended to use the vandalism as a justification for prematurely terminating his lease with Cadillac Square. Martin's former girlfriend testified that Martin admitted to vandalizing Cadillac Square and to hanging the flyers because he had lost his job and wanted to avoid eviction. Martin refuted this testimony at trial and testified that he never confessed to his former girlfriend that he committed the charged crimes. Nonetheless, we resolve all conflicts in the evidence in favor of the prosecution, and this Court will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses. *Id*. Thus, we defer to the jury's determination that Martin's former girlfriend's testimony was credible, and we conclude that the prosecution presented sufficient evidence to support that Martin made a false writing with knowledge of its falsity and with the intent to defraud.

Furthermore, the prosecution presented sufficient evidence that another person relied on Martin's false pretense. The director of operations for Cadillac Square testified that he approved Martin's request to prematurely terminate the lease with no penalty because Martin claimed to be intimidated by the vandalism. Evidence was also presented that it was rare for Cadillac Square management to approve early lease termination requests without imposing a penalty. Taking this evidence in the light most favorable to the prosecution, the evidence was sufficient to establish that another person relied on Martin's false pretense.

The prosecution also presented sufficient evidence that, by relying on the false pretense, Cadillac Square's losses exceeded $1,000. At trial, the prosecution presented evidence that Martin's monthly rent was $700. Evidence was also presented that the director of operations for Cadillac Square allowed Martin to prematurely terminate his lease as a result of Martin's representations that he was afraid to remain in the complex. Martin moved out in February 2017, and his apartment was not re-let until July 2017. Cadillac Square lost $2,800 worth of rent during that time, which is an amount in excess of the $1,000 statutory threshold.

In sum, taken in the light most favorable to the prosecution, the evidence presented at trial was sufficient to establish beyond a reasonable doubt that Martin used a false pretense to intentionally defraud Cadillac Square.

## B. INCONSISTENT VERDICTS

Martin argues in a cursory manner that because the jury acquitted him of malicious destruction of a building, the jury could not find him guilty of false pretenses. To the extent that Martin is attempting to argue that the verdicts are inconsistent, he cites no authority in support of the argument. *People v Hanna*, 223 Mich App 466, 470; 567 NW2d 12 (1997). In any event, the two verdicts are not inconsistent because the jury could have found that Martin was guilty of false pretenses but not malicious destruction of a building.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro