*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PAUL EDWARD ARROWOOD,

Defendant-Appellant.

UNPUBLISHED
August 14, 2025
9:37 AM

No. 372333
Saginaw Circuit Court
LC No. 24-000034-FH

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted[1] the trial court's order denying his motion to quash his bindover on one count of misconduct in office, MCL 750.505.[2] Findings no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of a physical altercation between defendant, a former Michigan State Police Trooper, and Michael Wilson. On the evening of September 4, 2022, defendant and his partner were on patrol when they saw Wilson walking on the side of the street. Defendant and his partner exited the patrol vehicle and approached Wilson on foot. As they approached, defendant told Wilson that he could not be walking in the roadway. Wilson stepped back from the street and onto the curb, after which defendant and his partner flanked Wilson, grabbed him by the arms, and escorted him to their patrol vehicle. During this encounter, Wilson's arms were tensed and outstretched, and he repeatedly stated, "time out."

---

[1] *People v Arrowood*, unpublished order of the Court of Appeals, entered January 17, 2025 (Docket No. 372333).

[2] Defendant was also bound over on one count of assault and battery, MCL 750.81(1), however, he does not address this charge in his motion to quash or in his brief on appeal.

Defendant told Wilson to put his hands behind his back, and Wilson replied, "Timeout—for what?" A struggle ensued, and defendant performed a "takedown" maneuver to bring Wilson to the ground. While on the ground, defendant and his partner physically struggled with Wilson and repeatedly told him to roll over onto his stomach. When Wilson did not, or could not, roll onto his stomach, defendant performed multiple closed-fist strikes against Wilson's face, head, and body. Defendant and his partner also threatened to use a taser on Wilson if he did not roll over. Eventually, defendant turned Wilson onto his stomach and commanded him to put his hands behind his back. Defendant delivered several knee strikes and closed-fist strikes against Wilson. Four other troopers arrived at the scene to assist in subduing Wilson, eventually handcuffing him. Defendant swore at Wilson several times during the altercation.

Defendant was eventually charged with one count of misconduct in office, MCL 750.505, and one count of assault and battery, MCL 750.81(1). The district court held a preliminary examination where it considered body-camera footage and testimony from Wilson and several officers. Notably, Michigan State Police Sergeant Justin Mazur, a defensive tactics training program coordinator, was admitted as an expert regarding the use of force. Sergeant Mazur testified that defendant's actions, particularly the takedown and closed-fist strikes, were not appropriate and did not comport with departmental policies based on the circumstances and what defendant articulated in his police report. Michigan State Police Sergeant Justin Kemerer, a defensive-tactics instructor, was also admitted as an expert and testified that defendant's actions were reasonable and proportionate given Wilson's resistance. Based on the testimony and video evidence, the district court found there was probable cause to support the charges and bound defendant over for trial in the circuit court.

Defendant moved to quash the misconduct-in-office charge in the circuit court, arguing that his actions were justified and reasonable given Wilson's resistance during the struggle. Defendant also asserted that whether his actions were reasonable was a question of law for the court to resolve. In rendering its decision, the circuit court noted that the events of the altercation were subject to competing interpretations, and that the reasonableness of defendant's actions was a question of fact for jury resolution. The circuit court denied defendant's motion, concluding there was sufficient evidence to support the bindover and submit the case to a trier of fact. This appeal ensued.

## II. STANDARDS OF REVIEW

This Court reviews a district court's decision to bind over a defendant for an abuse of discretion. *People v Hudson*, 241 Mich App 268, 276; 615 NW2d 784 (2000). The circuit court's decision on a motion to quash a bindover is not entitled to any deference, and this Court "essentially sits in the same position as the circuit court when determining whether the district court abused its discretion." *Id*. "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes," and "[a] trial court necessarily abuses its discretion when it makes an error of law." *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017) (quotation marks and citations omitted).

## III. ANALYSIS

Defendant argues that the circuit court erred by denying his motion to quash the bindover when it (1) determined that "reasonableness" under the Fourth Amendment was a question of fact for jury resolution, (2) found probable cause that defendant committed misconduct in office, (3) considered departmental policies and police reports in making its probable-cause determination, and (4) considered defendant's foul language in making its probable-cause determination. We disagree as to each contention.

In a preliminary examination, a magistrate has a duty to "consider all the evidence presented, including the credibility of witnesses' testimony, and to determine on that basis whether there is probable cause to believe that the defendant committed a crime . . . ." *People v Anderson*, 501 Mich 175, 178; 912 NW2d 503 (2018). In other words, a magistrate must determine "whether the evidence presented is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. (quotation marks and citation omitted). "[T]he magistrate may not weigh the evidence to determine the likelihood of conviction, but must restrict his or her attention to whether there is evidence regarding each of the elements of the offense . . . ." *Hudson*, 241 Mich App at 278. A defendant should be bound over for trial if the evidence conflicts or raises a reasonable doubt as to the defendant's guilt. *People v Yost*, 468 Mich 122, 128; 659 NW2d 604 (2003).

In this case, defendant was bound over based on MCL 750.505, which provides:

> Any person who shall commit any indictable offense at the common law, for the punishment of which no provision is expressly made by any statute of this state, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 5 years or by a fine of not more than $10,000.00, or both in the discretion of the court.

Here, the applicable common-law offense was misconduct in office. "At common law, misconduct in office was defined as corrupt behavior by an officer in the exercise of the duties of his office or while acting under color of his office." *People v Perkins*, 468 Mich 448, 456; 662 NW2d 727 (2003) (quotation marks and citations omitted). There are three different ways for an officer to be convicted of this offense: "(1) for committing any act which is itself wrongful, malfeasance, (2) for committing a lawful act in a wrongful manner, misfeasance, or (3) for failing to perform any act that the duties of the office require of the officer, nonfeasance." *Id*. Additionally, "the officer's wrongdoing must result from or directly affect the performance of his official duties," and "[i]n the case of malfeasance and misfeasance, the offender also must act with a corrupt intent, i.e., with a sense of depravity, perversion or taint." *Id*. (quotation marks and citations omitted). The parties agree that defendant did not commit nonfeasance and that defendant was a police officer engaged in the performance of his duties when the alleged wrongdoing took place. Therefore, the issues are limited to whether the prosecution established probable cause that defendant committed misfeasance or malfeasance with a corrupt intent.

In this case, the prosecution framed defendant's wrongdoing as a violation of the Fourth Amendment based on an unreasonable seizure and the use of excessive force. The Fourth Amendment of the United States Constitution, which was made applicable to the states through the Fourteenth Amendment, *People v Hanna*, 223 Mich App 466, 470; 567 NW2d 12 (1997), protects individuals from unreasonable searches and seizures, US Const, Am IV.

Defendant first argues that the reasonableness of his actions was a question of law and that the circuit court erred by determining it was a question of fact. Defendant concedes that at common law, the reasonableness of an individual's conduct is a question of fact for the jury. See *Pulver v Dundee Cement Co*, 445 Mich 68, 78; 515 NW2d 728 (1994) ("The common-law doctrine of mitigation is founded on reasonableness, and application of a reasonableness standard requires the factfinder to examine the facts and circumstances of each case."). Further, misconduct in office is a common-law offense, so it follows that the reasonableness of defendant's actions was a question of fact. See *Perkins*, 468 Mich at 456.

Nonetheless, relying heavily on federal precedent, defendant maintains that the reasonableness of a police officer's conduct under the Fourth Amendment is a question of law. Defendant's cited authorities are distinguishable. While the United States Supreme Court has acknowledged that the reasonableness of a police officer's actions under the Fourth Amendment is a question of law, this was in the context of a motion for summary judgment in an action under 42 USC 1983, not a preliminary examination in a state criminal case. *Scott v Harris*, 550 US 372, 381 n 8; 127 S Ct 1769; 167 L Ed 2d 686 (2007). This same distinction applies to the other federal cases defendant relies upon. Further, defendant's federal precedent even acknowledges that if there are disputed factual issues, a jury may determine the reasonableness of an officer's conduct. See *Tucker v Shreveport*, 998 F3d 165, 172 (CA 5, 2021) (noting that a jury may determine the issue of reasonableness where there are disputed issues of material fact).[3] Defendant's reliance on *People v Prude*, 513 Mich 377, 384; 15 NW3d 249 (2024), is likewise unpersuasive because it involved de novo review of a sufficiency-of-the-evidence challenge following a criminal conviction, not a bindover following a preliminary examination.

Defendant's position, that the district court had to resolve whether his conduct was reasonable, would necessarily require the court to weigh the evidence, which it was not permitted to do at the preliminary examination stage. See *Hudson*, 241 Mich App at 278 (noting that a magistrate "may not weigh the evidence to determine the likelihood of conviction"). As the circuit court properly observed, there were conflicting interpretations of the altercation, including the degree to which Wilson resisted defendant's commands and whether defendant's actions constituted excessive force in light of the circumstances. Because the testimony sharply conflicted regarding whether defendant's conduct was reasonable, the district court properly bound defendant over for trial and the circuit court did not err in denying defendant's motion to quash the bindover. See *Yost*, 468 Mich at 128 (noting that a defendant should be bound over for trial if there is conflicting evidence).

Next, defendant argues the district court erred by finding probable cause to bind him over on the charge of misconduct in office. Defendant's argument largely pertains to matters of weight, which the district court was not tasked with handling. See *Hudson*, 241 Mich App at 278. Defendant essentially focuses on the testimony supporting his position and puts forward his own interpretation of the video footage. However, the video footage speaks for itself, and there was ample evidence that justified the bindover.

---

[3] Although not binding, decisions by lower federal courts may be persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

In making a probable-cause determination at a preliminary examination, the magistrate was tasked with determining "whether the evidence presented [was] sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Anderson*, 501 Mich at 178 (quotation marks and citation omitted). Again, the relevant elements were whether defendant committed misfeasance or malfeasance—premised on a Fourth Amendment violation—with a corrupt intent.

The prosecution presented sufficient evidence that defendant's seizure of Wilson was unreasonable, and therefore a wrongful act constituting malfeasance or a lawful act done in a wrongful manner constituting misfeasance. See *Perkins*, 468 Mich at 456. Determining whether a seizure is reasonable requires a balance of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Hanna*, 223 Mich App at 471 (quotation marks and citation omitted). Before Wilson was seized by defendant, he was walking in the street and took a step back when defendant instructed him that he could not be walking in the roadway. Defendant's partner testified that he and defendant then seized Wilson to prevent him from fleeing. Accordingly, all subsequent events, including Wilson's active resistance and arrest, flowed from this seizure. The prosecution presented testimony that Wilson's step back from defendant could be interpreted as compliance rather than flight, and this competing interpretation is also supported by the body-camera footage. Assuming Wilson's step back from the officers was compliance, this provided evidence that defendant's subsequent seizure of Wilson was an unreasonable intrusion on Wilson's Fourth Amendment interests in light of the governmental interests at stake.

The prosecution also presented evidence that defendant's use of force was excessive, which again, could constitute malfeasance or misfeasance. See *Perkins*, 468 Mich at 456. Whether the use of force is excessive requires courts to evaluate "if the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, not with 20/20 hindsight." *Hanna*, 223 Mich App at 470-471 (quotation marks and citation omitted). The video footage is subject to multiple interpretations, including that Wilson's resistance was merely passive and that defendant escalated the altercation. Sergeant Mazur testified that defendant's takedown maneuver was not in line with departmental policy because Wilson's resistance was only passive and verbal at that point. Furthermore, Sergeant Mazur testified that defendant's use of fist and knee strikes was improper, given that Wilson was already on the ground and somewhat subdued. Sergeant Mazur also noted that defendant failed to articulate any justification for the use of force in his report, such as an immediate fear of weapons. Nor did the other troopers strike Wilson, suggesting that they did not believe such force was reasonable under the circumstances. Accordingly, there was evidence to support the elements of misfeasance or malfeasance. Moreover, defendant's actions along with his foul language provided evidence of a corrupt intent.

Under these circumstances, "a person of ordinary prudence and caution" could "conscientiously entertain a reasonable belief" that defendant committed the offense of misconduct in office. *Anderson*, 501 Mich at 178 (quotation marks and citation omitted). The district court properly found probable cause to bind defendant over, and the circuit court properly denied defendant's motion to quash the bindover.

Next, defendant argues that the circuit court erred by considering departmental policies in its probable-cause determination because such policies were irrelevant to an analysis of

reasonableness under the Fourth Amendment. Much of defendant's argument suggests that the Michigan State Police policies, as espoused by Sergeant Mazur in his testimony, somehow replaced the Fourth Amendment's "objectively reasonable" analysis. However, nothing in the district court's or circuit court's decisions indicates that this occurred. Rather, the district court summarily bound over defendant based on the video evidence and testimony, and the circuit court clearly set forth the "objectively reasonable" standard at the outset of its decision.

Although much of Sergeant Mazur's testimony was premised on departmental policy, defendant cites no authority suggesting that departmental policies can never be considered to evaluate what a reasonable officer would have done in the same situation. In fact, there is authority showing the opposite. See *Whren v United States*, 517 US 806, 815; 116 S Ct 1769; 135 L Ed 2d 89 (1996) (noting that police manuals and procedures "may sometimes provide objective assistance"); *Turner v Champaign*, 979 F3d 563, 568 (CA 7, 2020) (stating that "police training policies and best practices, while relevant, do not define what is reasonable under the Fourth Amendment"). Sergeant Mazur's testimony about departmental policies was not improper, nor is this a situation where departmental policies were improperly used as the legal standard. See *People v Fiedler*, 194 Mich App 682, 695; 487 NW2d 831 (1992) (holding that it was improper to admit evidence of a police department's shooting policy at a preliminary examination because it could not be used to "supersede the Michigan common-law fleeing-felon rule").

This same reasoning applies to the district court's consideration of defendant's police report regarding the altercation. As above, defendant cites no authority suggesting that a trooper's report is irrelevant or cannot be used in ascertaining reasonableness. Defendant cites *Whren*, 517 US at 812-813, and *People v Oliver*, 464 Mich 184, 200; 627 NW2d 297 (2001), for the proposition that his report is irrelevant to the reasonableness of his actions. However, these cases have no bearing on the relevancy of a trooper's report, and instead discuss how the subjective motivations of an officer do not make a traffic stop unreasonable where there is an otherwise objective reason for the stop. While "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," there is no indication that defendant's subjective intent was at issue in this regard. *Whren*, 517 US at 813. Rather, defendant's report and the departmental policies were used as relevant evidence to evaluate whether defendant's actions were objectively reasonable under the circumstances.

Lastly, defendant argues that the circuit court erred by considering his language in its probable-cause determination because his foul language during the altercation was irrelevant to whether his actions amounted to excessive force. Defendant's position ignores that his language was highly relevant to evaluating the element of corrupt intent. During the altercation, defendant repeatedly swore at Wilson. When considered along with his actions, defendant's language provided circumstantial evidence of "a sense of depravity, perversion or taint," particularly in the use of strikes against Wilson. *Perkins*, 468 Mich at 456 (quotation marks and citation omitted). See also *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020) ("Because it can be difficult to prove a defendant's state of mind on issues such as intent, minimal circumstantial evidence suffices to establish a defendant's state of mind."). The prosecution never sought to premise its charges solely on defendant's language, nor did the district court indicate that defendant's language was a primary factor in its decision to bind defendant over. Instead, the district court properly undertook its duty to "consider all the evidence presented," and determined

there was probable cause to believe that defendant committed misconduct in office. *Anderson*, 501 Mich at 178.

       Affirmed.

                    /s/ Kirsten Frank Kelly
                    /s/ Philip P. Mariani
                    /s/ Matthew S. Ackerman